The intermediate step in this cause requiring present consideration is the order directing the defendants to show cause why certain ad interim restraints should not be maintained until final hearing.
The bill of complaint introduces a cause of action which I have been inclined to believe occupies a doubtful place in the family of available equitable remedies. The complainants implore this court to enjoin the defendant Elges, a former employee of the complainant company, and his associates in *Page 2 
A-1 Exterminating Co., Inc., from soliciting business from the former customers of the complainants except by means of general public advertising. Here is a case in which the defendant Elges in accepting employment from the complainant company expressly declined to incur any contractual obligation abridging his right to engage in a similar enterprise and to solicit the company's customers.
I apprehend it to be unwise in the field of jurisprudence to impose exceptions upon established general rules unless cogent considerations of justice or equity manifestly require them. It has long been the settled and frequently repeated general rule in our jurisdiction that "in the absence of a restrictive covenant, and when no fraud is practiced, a former employee will not be enjoined from soliciting the customers of his former employer." "The law distinguishes between an employee pirating his employer's trade by fraudulent means, and honestly competing with him for it." Salomon v. Hertz, 40 N.J. Eq. 400, 403;2 Atl. Rep. 379; Newark Cleaning and Dye Works, Inc., v. Gross,97 N.J. Eq. 406; 128 Atl. Rep. 789; Lewitter v. Adler, 101 N.J. Eq. 74; 137 Atl. Rep. 541.
I add a typical quotation from the research of the editorial staff of American Jurisprudence: "In a majority of the cases in which the question has been raised it has been held that in the absence of an express contract, the employee may thus solicit the business of the former customers, and he will not be enjoined from so doing." 35 Am. Jur., "Master and Servant," § 100.
See, also, 28 Am. Jur., "Injunctions," § 113.
Consulting the comprehensive annotations of American LawReports, the following survey of the pertinent decisions is discovered: "Thus as shown by the earlier annotation (23 A.L.R. 423), it is the general rule that in the absence of an express contract forbidding solicitation of a former employer's customers, an employee, in entering into competition with his former employer, either on his own account or on behalf of another in the same business, may solicit the business of his former customers, and will not be enjoined from such solicitation at the instance of his former employer. The majority of the later decisions are also to this effect." 126 A.L.R. 758. *Page 3 
I incline favorably toward the statements expressed by Vice-Chancellor Bigelow in Haut v. Rossbach, 128 N.J. Eq. 77
(at p. 79); 15 All. Rep. 2d 227; affirmed, 128 N.J. Eq. 478; 17 Atl. Rep. 2d 165: "Sound public policy encourages employees to seek better jobs from other employers or to go into business for themselves. Contracts which hinder their so doing are strictly construed and rigidly scanned and are declared void unless necessary for the reasonable protection of the employer. In the absence of agreement, as the decisions above cited demonstrate, there must be a very strong case before the court will restrain the former employee from competing with his former employer. In most jurisdictions, there seems to be no exception to the rule that a former employee is at liberty to compete.23 A.L.R. 423; 126 A.L.R. 758."
It is observed that in Maas Waldstein Co. v. Walker,100 N.J. Eq. 224; 135 Atl. Rep. 275; affirmed, 102 N.J. Eq. 328;140 Atl. Rep. 921, Vice-Chancellor Berry concluded (on p. 234): "They (the defendants) should not be restrained from representing that they can furnish lacquers and enamels equal in quality to those of the complainant, nor can they be restrained from soliciting business from the trade generally irrespective of whether or not that trade includes former or present customers of the complainant."
To catalogue the employee's own knowledge of his employer's customers in a simple artless business as a "trade secret" or "confidential information" and thus perpetually enjoin the employee from thereafter honestly soliciting business from such customers in a competitive enterprise seem to me at the moment to be an unreasonable restraint of trade unsupported by any dominant social or economic justification. Bond Electric Corp. v.Keller, 113 N.J. Eq. 195; 166 Atl. Rep. 341.
Let it be at once understood that situations implicating a direct or indirect breach of restrictive provisions of employment contracts, or involving the obligations of a confidential relationship, or the use of secret trade information surreptitiously obtained, or other like instances of fraudulent practices and infringements are not within the scope of this memorandum. *Page 4 
It is nevertheless proposed that the general rule should be decimated by an exception where the customers of the employer are "occasional" or "latent." It is noticed that such an exception has not been greeted with approval in most jurisdictions, and its adoption has not as yet made much headway in ours. Who is to decipher and elucidate the environment of a "latent customer?" If such an exception to the general rule is to be recognized, who is capable of informing the former employee of its boundaries? For example, in the present cause the complainant company is engaged in the business of exterminating rodents and insects of the family Blattidae, commonly known as cockroaches. The complainant has no solicitude to ensconce its means and appliances utilized in the extermination of the pests, or to conceal the nature of its business, but it avows that the sensibilities of its customers would be wounded if it were generally known that they were in need of such an accommodation. Therefore its customers are sought to be technically characterized as "occasional" and "latent." One is therefore induced to conjecture whether the proposed exception to the general rule is promoted to conceal the intercourse of the customer who is not here complaining or to fortress the business of the former employer against competitors. If I were to pursue a course of reasoning on that plane, I would be driven to suppose that a clerk in a drug store who opened a pharmacy of his own could be enjoined from supplying pharmaceutical medications for venereal disorders, for example, to those customers of his former employer whom he knew to be in need of such medicaments, merely because "the information is not available to or could not readily be obtained by the public or any other individual." If, in such circumstances, the ambitious employee in the promotion of his own business presented to the customer a medicative that he represented to be more efficacious, should he be charged with deliberately endeavoring to pirate and capture the customer of his former employer? No. The application of the exception is restricted, it is said, to those businesses in which the customers in general are "occasional" or "latent."
The business of cleaning windows (Lewitter v. Adler, supra) and that of furnishing lunches (Haut v. Rossbach, *Page 5 supra) are to be excluded from that class because we are reminded that most people need to wash their windows and all people must eat. Yet, in the present age, the dweller having electric refrigeration does not buy ice; the resident having an oil burner does not purchase coal. Have the customers of the ice man, the coal man, and the ash man already become or will they, too, soon become "occasional" and "latent?" Again, no. Why? Because we are given to understand that a sufficiently inquisitive competitor could follow the ambulant excursions of the itinerant ice man, ash man, and coal truck driver, and thereby ascertain the identity of such customers.
Knowing nothing about the business of pest extermination, it seems to me that the ordinary person would dare surmise that the class of customers are principally those conducting hotels, restaurants, bakeries, butcher shops, rooming houses, and apartment buildings. Probably the cockroach is not as discriminating as the rodent and is more vagrant. This loose supposition concerning the field of customers actually receives factual confirmation in one of the answering affidavits. Incidentally, there are eight independent contractors engaged in that business in the City of Trenton. It is not intimated that the performance of the service requires any unique skill or anomalous ability. Perhaps an unimportant factor. Sarco Companyof New Jersey v. Gulliver, 3 N.J. Mis. R. 641, 647;129 Atl. Rep. 399; affirmed, 99 N.J. Eq. 432; 131 Atl. Rep. 923. The chemical materials are purchased from the pest control industry.
Here, there was no peculiarly confidential relation between the parties. No trade secret is involved. No fraud is being practiced. No misrepresentations are being made. The complainants are vexed because the employee voluntarily relinquished his employment in the hope of improving his own fortunes by conducting a similar business. He is merely carrying into his new venture the knowledge and experience that he scrupulously acquired in the old. If the future is to be erected upon the experiences of the past, then emulation is the beginning point of progress. Progress is not to be confined to the discovery of a new enterprise. It may well be a more advantageous and efficient extension of an old one. *Page 6 
In such situations, the following citations reveal the course of judicial opinion: Boone v. Krieg, 156 Minn. 83;194 N.W. Rep. 92; Padover v. Axelson, 268 Mass. 148; 167 N.E. Rep. 301; DiAngeles v. Scauzillo, 287 Mass. 291; 191 N.E. Rep. 426;American Cleaners and Dyers v. Foreman, 252 Ill. App. 122;Progress Laundry Co. v. Hamilton, 208 Ky. 348;270 S.W. Rep. 834; Ice Delivery Co. v. Davis, 137 Wn. 649;243 Pac. Rep. 842; New York Towel Supply Co. v. Lally, 162 N.Y.S. 247;Standard Library v. Addis, 167 Misc. (N.Y.) 469; 3 N.Y.S.
2d 488; Jewel Tea Co. v. Grissom, 66 S.D. 146;279 N.W. Rep. 544.
In the contraction of business opportunities, the right of the energetic individual to honorably compete is more than ever indispensable to his right to prosper and excel. If an employer is apprehensive of the prospective honest competition of his employees, let him obtain from them a restraining covenant ancillary to their contracts of employment. A legal regulation that purports to compel ambitious employees to eradicate from their minds the names of customers whom they have personally served in a former employment is in my opinion fantastic. An unwritten and judicially contrived rule that in effect compels former employees to hesitate to accept trade in a competitive business undertaking from those known customers lest they, the former employees, be subjected to an anticipated law suit, may well be a capitalistic aspiration, but it does not seem to me that it ought to find favor in a court of equity.
Perhaps I have attacked the subject with too much "whip and spur" on a preliminary application. It is expedient, however, for counsel to know that I am not persuaded that the general rule so readily understood should be weakened by such a lean exception.
Counsel for the complainants places before me the decision inAbalene Exterminating Co., Inc., v. Oser, reported in125 N.J. Eq. 329; 5 Atl. Rep. 2d 738, in which he asserts that this court held that "one engaged in the business of supplying goods or services to customers has a property right in the knowledge, information and records as to the names and addresses of his customers and that an employee who by reason of and in the course of his employment, obtains such *Page 7 
knowledge or information as to his employer's customers, rests under an implied obligation not to use such knowledge or information for his own individual use or benefit, irrespective of any express contract against his so doing." Sic, syllabi of the opinion. So stated, that is the precise proposition of law to which I decline to subscribe. It savors too much of involuntary servitude.
I am constrained in that particular to observe that in estimating the influence of our reported decisions, it must be realized that the opinion itself dominates the syllabus. An examination of the opinion of the learned Vice-Chancellor in that cause will reveal that "the employment contract contained a restrictive covenant by Jacob Oser against his engaging in any similar business in the State of New Jersey, either directly or indirectly, as an individual, partner, stockholder, director, employee, c., for a period of five years after the termination of his employment with complainant." The brother through whom the offending employee endeavored to indirectly violate the covenant occupied by reason thereof no more respectable position than that of the receiver of stolen trade information. Stone v.Grasselli Chemical Co., 65 N.J. Eq. 756; 55 Atl. Rep. 736. The covenant was a factual circumstance of substantial significance. I am not impinged on the doctrine of stare decisis because equity should always raise its arm in restraint of fraudulent practices.
Similarly in such cases as Owl Laundry Co. v. Banks, 83 N.J. Eq. 230; 89 Atl. Rep. 1055; Golden Cruller, c., Co. v.Manasher, 95 N.J. Eq. 537; 123 Atl. Rep. 150; Capital LaundryCo. v. Vannozzi, 115 N.J. Eq. 26; 169 Atl. Rep. 554; CreditRating Service, Inc., v. Charlesworth, 126 N.J. Eq. 360;8 Atl. Rep. 2d 847; Vander May v. Schoone-Jongen, 126 N.J. Eq. 336; 16 Atl. Rep. 2d 198; affirmed, 130 N.J. Eq. 227;21 Atl. Rep. 2d 819, the complainants desired injunctive relief against practices forbidden by a negative covenant. The observations expressed by Vice-Chancellor Sooy in AutomobileClub of Southern New Jersey v. Zubrin, 127 N.J. Eq. 202 (atp. 206); 12 Atl. Rep. 2d 369, might be very aptly addressed to the facts of the instant cause. Other cases relative to the wrongful use or divulgence of unpatented secret processes and kindred confidential knowledge *Page 8 
are manifestly distinguishable from the one at hand. Cf. Stone
v. Grasselli Chemical Co., supra; Taylor Iron and Steel Co. v.Nichols, 73 N.J. Eq. 684; 69 Atl. Rep. 186.
I regard it to be unnecessary to elaborate this somewhat lengthy memorandum with a disclosure of the contradictory and divergent statements embodied in the affidavits, further than to emphasize that the complainant company which commenced business in this territory in January, 1944, did not contractually acquire by purchase or otherwise the trade or property of the corporation of New York by which the defendant Elges was for many years employed. The New York company has discontinued its enterprise. Elges did not filch any list of the customers of either the New York or New Jersey company. He necessarily became aware of them in the pursuit of his personal performance and supervision of the services. He left the employ of the complainant company of New Jersey on April 27th, 1945. Suffice to relate that the other individual defendants, Green and Stead, who are financially associated with Elges in the defendant company, are each regularly engaged in other occupations, and the proofs do not implicate them in the alleged objectionable solicitation of former customers of the complainants.
Obviously, the alleged cause of action of the complainants stands in need of the support of the exceptional rule occasionally applied in some jurisdictions to enjoin, in the absence of fraud or negative covenant, the solicitation of so-called "latent customers." The conclusion is that the factual circumstances exposed at present by the pleadings and affidavits do not in my judgment equitably entitle the complainants to the preliminary injunctive relief requested.
The order to show cause will be dismissed and the ad interim
restraints discharged; this without prejudice, however, to the opportunity of the complainants to bring to the attention of this court any efforts that may be exerted by the defendants to induce the customers of the complainants to cancel their existing contracts. *Page 9