REGAN, Judge.
The plaintiff, Bookkeepers Business' Service, Inc., filed this suit against the defendant, Jerry B. Davis, a former employee, endeavoring to obtain a preliminary injunction restraining him, his agents and employees from violating an employment contract which was signed by Davis wherein he agreed not to solicit or engage in business with any of the plaintiff’s clients for a *2 period of two years after the termination ■of his employment.
In response to the foregoing suit, the defendant pleaded the exception of no cause of action predicated upon the rationale of R.S. 23:921, which renders agreements unenforceable which prohibit a former employee from engaging in a competing business for himself or as the employee of another upon the termination of his contract of employment.
A hearing occurred on the plaintiff’s rule for a preliminary injunction,' and as a result thereof, the lower court rendered a judgment in favor of the defendant denying the request for a preliminary injunction and dissolved the temporary restraining order which it had previously issued predicated upon the allegations made in the plaintiff’s ex parte petition.
From that judgment, the plaintiff has prosecuted this appeal.
The record discloses that the plaintiff is •engaged in the operation of a bookkeeping and tax service in this area. The defendant was an employee thereof who worked in several of its offices in the capacity of a branch manager from August, 1966, until June 12, 1967.
His contract of employment, dated August 10, 1966, provided that an:
“(b) Employee shall not, for a period of two (2) years following the termination of his employment, while engaged, directly or indirectly, in the bookkeeping, tax, business service, public or other accounting business, or employed or associated with anyone else in such business, or businesses, canvass or solicit for his own use and benefit or for the use and benefit of his employer or associates, any of the accounts or clients of the Company, nor do any work or service for such accounts or clients of the Company during said two-year period, nor shall he accept the business of any such accounts or clients even though such business is voluntarily offered to him by any such account or client.”
The record additionally discloses that in May, 1967, prior to the termination of his employment, the defendant solicited certain corporate accounts, which were no longer affiliated with the plaintiff, with the intention of opening his own bookkeeping and tax service. On June 12, 1967, he actually teritiinated his' 'employment and thereafter opened a business which he designated as the “Associated Accounts Company” in partnership with one Frank Giardina, who had previously worked for the plaintiff as an office manager. This partnership between the defendant and Giardina was quite brief; it lasted for about seven days and was dissolved on June 19, 1967. The defendant, however, continued doing business under the trade name of “Commercial Bookkeeping Service”.
The defendant argues that by virtue of the rationale emanating from R.S. 23:921, the foregoing employment contract is null, void, and unenforceable. It reads:
“No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that em *3 ployer is engaged over the same route or in the same territory for a period of two years.”
An analysis of the jurisprudence interpretative of the foregoing statute reveals that the defendant’s contention with respect to the invalidity of the employment agreement is untenable. In the case of Martin-Parry Corp. v. New Orleans Fire Detection Service,[1] the Supreme Court considered a contract which was very similar to the one posed for our .consideration herein. In that case the pertinent part of the agreement reads:
“ ‘ * * * prior to the termination hereof, or for a period of two (2) years after the termination hereof, disturb, hire, entice away, or in any other manner persuade any employee or dealer of the Company to discontinue his relation to the Company as an employee or dealer, as the case may be.’ ”
In refuting the contention that this provision violated the rationale of R.S. 2.3:921, the organ for the Court pointed out that the contract did not prohibit the defendant from engaging in a competing business or working for a business which was in competition with his former employer. On the contrary, the Court specifically distinguished the contract by pointing out that its provisions precluded only the enticement or luring of dealers or employees who were in the service of the plaintiff employer. This covenant, the Court reasoned, was not encompassed by the terminology of R.S. 23:921, which simply prohibits the confection of agreements purporting to bar the employee from engaging in competing businesses.
We are therefore of the opinion that the plaintiff’s interpretation of the law relative to employment restrictions is quite correct. In other words, the agreement which forms the subject matter of this suit was a valid employment contract. However, the evidence inscribed in this record convinces us that the lower court was likewise correct in refusing to grant the plaintiff a preliminary injunction, despite the fact that the employment contract was perfectly valid, because of the facts which are to follow.
The preponderance of the evidence discloses that the plaintiff was not equipped to handle corporate bookkeeping and tax service, and disassociated itself with any of its clients which became incorporated. Moreover, the record reveals that many of the plaintiff’s clients were not satisfied with its services, particularly because the volume of the plaintiff’s business precluded the close attention demanded by some of its customers. For example, the evidence adduced herein showed that approximately 7.1% of the plaintiff’s clients disassociated themselves from it each month.
The defendant testified, and the plaintiff offered little or no evidence in contradiction thereof, that he merely solicited the business of those firms which became disassociated from the plaintiff because of their incorporation or because the plaintiff’s-service did not satisfy them. His testimony may be summed up by virtue of his statement to the effect that while he did not solicit the business of any of the plaintiff’s active clients, he was “in the unfortunate-circumstance” of knowing which ones no-longer were affiliated with the plaintiff.
In view of what we have sáid hereinabove, we are of the opinion that the agreement which forms the subject matter hereof was a valid, bilateral commutative covenant; however, it was not violated by the defendant. His contract with the plaintiff’s ex-customers,[2] occurred after these individuals were no longer using *4 the plaintiff’s services. In view of these facts, the restrictive provision of the contract was not abrogated by the defendant, and the plaintiff was therefore not entitled to a preliminary injunction.
For the foregoing reasons, the judgment ■of the lower court is affirmed.
|The plaintiff is to pay all costs incurred herein.
Affirmed.

. 221 La. 677, 60 So.2d 83 (1952).

. Much of the evidence showed tliat the customers which the plaintiff claimed were taken away by the defendant were no longer in business or had quit the plaintiff without the intervention of the defendant.