**SERVISCO, Plaintiff,**

v.

**Peter MORREALE and Tulane Industrial Laundry & Uniform Rental Service, Inc., Defendants.**

**Civ. A. No. 69–1849.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

April 15, 1970.

Harry McCall, Jr., Jarrell E. Godfrey, Jr., New Orleans, La., for plaintiff.

John A. Salvaggio, New Orleans, La., for defendants.

RUBIN, District Judge:

This diversity case requires the application of Louisiana law to the frequently litigated, emotionally charged imbroglio created when a former employee solicits the customers of his ex-employer. The plaintiff, Servisco, engages in an industrial laundry rental business under the trade name, "Protexacar." It manufactures and rents wiping towels and fender covers to customers such as automobile repair shops and service stations. A Protexacar employee is assigned a regular route in a particular geographic area. He handles the accounts of the original customers on the route and solicits new customers in his territory. After leaving an original stock of clean supplies he makes weekly service calls on each customer. He picks up the soiled towels and covers, replaces them with clean ones, presents a bill, and returns the used supplies to Protexacar for laundering.

## THE EMPLOYMENT COVENANTS

In 1945 Protexacar employed Peter Morreale as a route salesman for the New Orleans-Southeastern Louisiana area. The contract, dated September 6, 1945, employed Morreale at a commission of 30% of his gross sales. It contained a non-solicitation clause that provided Morreale would not solicit the customers that he serviced on his Protexacar route for a period of one year following termination of his employment with Protexacar. On February 7, 1949, Morreale and Protexacar entered into two new agreements. In one Morreale sold Protexacar an industrial laundry business; in the other Protexacar renewed Morreale's employment at the same rate of compensation. The second employment contract did not contain a non-solicitation clause but the agreement concerning the sale of the business contained a clause whereby Morreale agreed not to engage in any industrial laundry business, including the rental of industrial laundry supplies in certain cities in Louisiana and Mississippi for two years after the date of the agreement.

In 1957, Protexacar sent its district representative an undated printed form with blank spaces containing an agreement by "_____ residing at _____, hereinafter designated as the Employee" not to solicit the customers of "National Industrial Laundries" for one year after the termination of employment. Protexacar's General Manager, Joseph E. Longo, testified that the form was a revised employment contract formulated by Protexacar's legal department, and that its attorneys had advised Protexacar to get its employees to sign it. After the employee had signed, the form was to be returned to Protexacar who would fill in the blank spaces. Morreale signed the blank form. There is no evidence that he read it, or that it was read to him.

There is no direct evidence by the person who presented it to Morreale, nor is there any evidence about the circumstances surrounding its presentation.

The form was returned to Protexacar's home office in New Jersey where, for unknown reasons, it was dated September 3, 1945, although in fact the date of insertion was some time in 1957. The form was then completed by inserting Morreale's name and address in the blank spaces. In addition the words "National Industrial Laundries" were deleted, and the name "Protexacar" was typed in its place. Longo signed the form on behalf of Protexacar.

Some time in 1966 Morreale stopped making personal calls on the customers on the Protexacar route and hired Tony Beninato to service the route for him. On May 3, 1969, Morreale telephoned Servisco and told them he was no longer going to act as their representative. He began servicing former customers of

Protexacar for the account of Tulane Industrial Laundry and Uniform Rental Service, Inc. (Tulane), an industrial laundry business of which he was President and Manager. There is evidence that Morreale, through Beninato, began servicing Protexacar customers for Tulane's account prior to the time Morreale gave this notice to Servisco.

Servisco contends this contract, dated 1945 but actually executed in 1957, is now binding on Morreale. It is superogatory to dwell at length on the cases it cites in an effort to make a picture of enforceability out of this jigsaw puzzle. We therefore need not discuss the cases cited as holding that it is not a material alteration of an instrument to fill in blanks when authorized to do so; or those holding that it is not a material alteration of an instrument to correct the name of a party to it; or that it is not illegal to do business under a trade name; or that an instrument is not voided when the name of a party is scratched through so long as his identity is readily ascertainable; or that misdating an instrument does not "necessarily" affect its validity; or any of the other byways that the court is invited to explore.

In accordance with its policy disapproving restrictions on competition and limitations or undue restrictions on a person's opportunity to work at his trade, Louisiana declares invalid agreements preventing an employee from competing with his former employer upon termination of his employment except in a narrowly defined area not applicable here. LSA–R.S. 23:921. But Louisiana's courts have construed the statute literally and have held that its reach is limited to agreements that prevent an employee from engaging in the same business as his former employer; they have enforced agreements that merely prevent the solicitation of the customers of his former employer. Bookkeepers Business Service, Inc. v. Davis, La.App.1968, 208 So.2d 1; Delta Finance Company of Louisiana v. Graves, La.App.1965, 180 So.2d 85;

Martin-Parry Corp. v. New Orleans Fire Detection Service, 1952, 221 La. 677, 60 So.2d 83; and opinion of this court in Buckeye Garment Rental Co. v. Jones, E.D.La.1967, 276 F.Supp. 560, and cases cited therein.

Morreale has limited education. The preponderance of the evidence indicates that he never understood the paper he signed, and that it was never explained to him. In this action the court's equity power has been enlisted in an attempt to obtain a writ of injunction. Under the circumstances it would be both inequitable and adverse to Louisiana's policy favoring free competition to enforce the contract's conditions against Morreale.

## CUSTOMERS LISTS

Servisco urges that Morreale and his employee Beninato had a mental customers list and that they should be enjoined from soliciting any of the customers on the basis that this is confidential information. *Compare*, Baton Rouge Cigarette Service v. Bloomenstiel, La.App.1956, 88 So.2d 742; Standard Brands, Inc. v. Zumpe, E.D.La.1967, 264 F.Supp. 254; Franke v. Wiltschek, 2 Cir.1953, 209 F.2d 493; and Restatement of Agency (2d), Section 396(b). But the information Morreale and Beninato have is not "confidential" in the sense the term is used in stating the rule forbidding an employee to use or disclose information learned in confidence during an employment relationship. The names and addresses of these customers are easily ascertainable and are generally available to the public and therefore cannot constitute confidential information. The evidence establishes that it is a trade custom to solicit all of the service stations, automobile repair shops, and other potential customers on a route. The knowledge of which among these is a Protexacar customer is, under the circumstances, not a trade secret. See Edwin L. Wiegand Co. v. Harold E. Trent Co., 3 Cir.1941, 122 F.2d 920, cert. denied, 316 U.S. 667, 62 S.Ct. 1033, 86 L.Ed. 1743; Affiliated Music Enterprises, Inc. v. Sesac, Inc., 2 Cir.1959, 268 F.

2d 13, cert. denied, 361 U.S. 831, 80 S. Ct. 82, 4 L.Ed.2d 74; Di Angeles v. Scauzillo, 1934, 287 Mass. 291, 191 N.E. 426; Scavengers' Protective Asso. v. Serv-U-Garbage Co., 1933, 218 Cal. 568, 24 P.2d 489; Town & Country House & Home Service, Inc. v. Newberry, 1958, 3 N.Y.2d 554, 170 N.Y.S.2d 328, 147 N.E. 2d 724; Van Products Co. v. General Welding & Fabricating Co., 1965, 419 Pa. 248, 213 A.2d 769, and other cases cited in Annotation, 28 A.L.R.3d 7, 42–45 (1969). See also Restatement of Agency (2d), § 393.

Louisiana's conclusion in this regard is in accordance with the prevailing view. In a comprehensive Annotation, (1969) Former Employee's Duty, In Absence of Express Contract not to solicit Former Employer's Customers or Otherwise Use his Knowledge of Customer Lists Acquired in Earlier Employment, 28 A.L.R.3d 7, 18, the statement is made:

"It is beyond question that a former employee, in the absence of an agreement to the contrary, may compete with his former employer, and no case in point for this annotation denies the right of a former employee to engage in fair and open competition for the patronage of his former employer's customers."

A number of cases are correctly cited in support of this thesis. To forbid any solicitation of any of Servisco's former customers would be in effect to prevent Morreale from engaging in business in this geographic area.

■ Louisiana courts have refused to issue an injunction against solicitation of customers of a former employer where the ex-employee did not use a secret list and merely relied on memory. Baton Rouge Cigarette Service v. Bloomenstiel, *supra*; Delta Finance Company of Louisiana v. Graves, La.App.1965, 180 So.2d 85; Marine Forwarding & Shipping Co. v. Barone, La.App.1963, 154 So.2d 528; Theatre Time Clock, Inc. v. Stewart, E.D.La.1967, 276 F.Supp. 593, 599 ("An employee is not required to ignore general information acquired by experience and committed to memory."). See, Annotation, 1969, 28 A.L.R.3d 7, 66 for cases to the same effect from other jurisdictions.

■ The Restatement of Agency (2d), § 396(b) provides: "* * * The agent is entitled to use general information concerning the method of business of the principal and the names of the customers retained in his memory, if not acquired in violation of his duty as agent * * *." This result is consistent with the general view that, in the absence of an agreement not to do so, a former employee may solicit the business of customers of his ex-employer. See, Di Angeles v. Scauzillo, 1934, 287 Mass. 291, 191 N.E. 426; Fulton Grand Laundry Co. v. Johnson, 1922, 140 Md. 359, 117 A. 753; Garst v. Scott, 1923, 114 Kan. 676, 220 P. 277; Abalene Exterminating Co. v. Elges, 1945, 137 N.J. Eq. 1, 43 A.2d 165; Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy, 1964, 415 Pa. 276, 203 A.2d 469; Annotations, 23 A.L.R. 423; 126 A.L.R. 758; 28 A.L.R. 3d 7. *Compare*, Bookkeepers Business Service, Inc. v. Davis, *supra*.

■■ But, although Morreale is not bound by the provisions of the purported contract, his education and business experience are enough for him to know fair means from foul. He did not need wind from the northeast to tell hawk from handsaw in this regard. The evidence justifies the inference that he deliberately set out to take over Servisco's customers. In some instances he diverted customers to his own account before May 3, 1969 when he terminated his representation of Protexacar. In others he delivered fender covers marked with the registered trade name "Protexacar" after he was no longer connected with Protexacar.

With Protexacar's knowledge, and without objection, Morreale began, after 1949 to develop routes for the rental of wiping towels and fender covers in other areas than those served by him for Protexacar, using the trade name "Tulane

Industrial Laundry." From 1949 to May, 1969 Tulane laundered Protexacar's supplies. Morreale ceased to operate the Protexacar route personally in 1966 and hired Beninato to do so. When Morreale telephoned Servisco and told them he was no longer going to act as its representative Beninato had been working the route for 3½ years, for a salary of $100 weekly paid him by Morreale, who in turn received the 30% commission from Protexacar.

Beginning the week after Morreale ceased to represent Protexacar, his representative began to call on and serve every customer on the Protexacar route. The trade name "Tulane Industrial Laundry" was used on this route. Morreale did not notify the customers of the change, although Beninato casually mentioned the difference to a few customers. The bills were different in appearance and had the name Tulane Industrial Laundry printed on them, but, except for their bookkeepers who made out the checks, most of the customers were not conscious of any change and did not consciously elect to give their patronage to Morreale rather than Protexacar. The bills bore the identifiable voice of Morreale, but the hands exposed to the customer were those of Protexacar. In addition, before terminating the Protexacar relationship, Morreale had switched a few customers to the Tulane route without Protexacar's consent.

Morreale's conduct was clearly wrong. His solicitation of customers prior to May 3, 1969 was a breach of his duty as Protexacar's agent "not to compete with [his principal, Protexacar] concerning the subject matter of his agency." Restatement of Agency (2d), § 393. While the information he utilized was not confidential and no breach of an agency duty resulted, the deceptive practices he employed after May 3, 1969, to divert Protexacar's customers for Tulane's account, constitute unfair competition. See, Philadelphia Dairy Prod. v. Quaker City Ice Cream Co., 1932, 306 Pa. 164, 159 A. 3, 84 A.L.R. 466; Lane Bryant, Inc. v. Maternity Lane, 9 Cir.1949, 173 F.2d 559; W. R. Speare Co. v. Speare, 1920, 49 App.D.C. 318, 265 F. 876. See also, Wallich v. Koren, 1947, 80 Cal.App. 2d 223, 181 P.2d 682; People's Coat, Apron & Towel Supply Co. v. Light, 1916, 171 App.Div. 671, 157 N.Y.S. 15, aff'd, 224 N.Y. 727, 121 N.E. 886. *Compare,* Tinseltex Importing Co. v. Greenwald, 1939, 16 N.Y.S.2d 422; Carl A. Colteryahn Dairy Inc. v. Schneider Dairy, 1964, 415 Pa. 276, 203 A.2d 469; Brown & Root, Inc. v. LaBauve, W.D.La.1962, 219 F.Supp. 179; Standard Brands, Inc. v. Zumpe, E.D.La.1967, 264 F.Supp. 254.

Servisco is entitled to relief from the effects of Morreale's wrongful conduct. But it is not entitled to be protected from competition by him in the future. An injunction decree should conform to the requirements of the case; it should give relief from the wrong committed but it should not be so broad as to inflict an unwarranted injury on the defendant. A summary of the periods for which injunctive relief has been granted is set forth in Annotation, 1969, 28 A. L.R.3d 7, 132–138. Here it appears that justice can best be done by preventing Morreale from calling on or serving the customers he has diverted from Servisco both before and after May 3, 1969, for a period of six months, and by requiring him to account to Servisco for the profits he has deemed from his wrongful conduct. During those six months Servisco can serve its former customers without Morreale's competition. At the end of that time, they can each compete freely for patronage.