**UNITED STATES of America,**
**Plaintiff,**

v.

**INTERNATIONAL BUSINESS MA-**
**CHINES CORPORATION,**
**Defendant.**

**No. 69 Civ. 200 (DNE).**

United States District Court,
S. D. New York,
Civil Division.

May 2, 1975.

---

1. These documents bear the identification, "SRC Document Nos. 11424, 11501, and 11538."

Raymond M. Carlson, Antitrust Div., Dept. of Justice, Washington, D. C., for plaintiff.

Richard L. Post, John M. Furlong, Minneapolis, Minn., Philip S. Paul, Waltham, Mass., for movant Honeywell, Inc.

James M. Clabault, Detroit, Mich., Burroughs Corp., for movant Burroughs Corp.

Thomas D. Barr, Cravath, Swaine & Moore, New York City, for defendant.

## OPINION

EDELSTEIN, Chief Judge:

The deposition program in this antitrust action involving hundreds of nonparty witnesses gives rise to the instant opinion. These depositions are governed by the Publicity in Taking Evidence Act, 15 U.S.C. § 30 (1970), which mandates that depositions taken in a suit in equity brought by the United States under 15 U.S.C. §§ 1–7 shall be open to the public as freely as are trials in open court and that no order excluding the public from such proceedings shall be valid or enforceable. Aware, however, that these depositions might expose and explore trade secrets or other confidential research, development, or commercial information, this court devised a procedure for temporarily protecting this information by allowing the nonparty deponent to exercise his discretion in designating portions of the deposition which should be protected within the guidelines of Fed.R.Civ.P. 26(c)(7) until the court could rule on the proper treatment of the testimony and exhibits.[1] Three requests for the con-

---

[1]. Trade secrets and other confidential commercial information enjoy no privilege from disclosure although courts may choose to protect such information. Natta v. Zletz, 405 F.2d 99 (7th Cir. 1968), cert. denied, 395 U.S. 909, 89 S.Ct. 1753, 23 L.Ed.2d 223 (1969) ; United States v. Standard Oil Co., 23 F.R.D. 1 (S.D.N.Y.1958) ; Shawmut, Inc. v. American Viscose Corp., 11 F.R.D. 562 (S. D.N.Y.1951).

The court formalized its protective procedure in Pretrial Order No. 13. As amended May 6, 1974, Pretrial Order No. 13 allowed the deponent to object to the public disclosure of any information he designated as confidential and to adjourn the deposition as to designated matters but continue as to all others. Upon adjournment, the witness could move the court for an order permitting the deposition to be taken *in camera* in order to protect the confidential information sought at the deposition.

As amended October 1, 1974, Pretrial Order No. 13 offered an additional, expeditious procedure for handling confidential information. With the deponent's consent the deposition may proceed without the public being present with regard to those matters specifically designated as being confidential. This portion of the deposition testimony and the annexed

tinued sealed protection of commercial information contained in certain deposition testimony and deposition exhibits are currently before the court; whether they should remain sealed is the subject of this opinion.[2]

■ The statutory mandate that depositions taken in a suit in equity brought by the United States under 15 U.S.C. §§ 1–7 shall be open to the public as freely as are trials in open court has enjoyed little judicial discussion, and this court is aware of no precedential judicial guidance for protecting confidential information disclosed in depositions governed by the statute.[3] Nevertheless, a plain reading of the statute indicates that if the public may be excluded during trial or if evidence may be received there *in camera*, the same may be possible during depositions governed by the statute. Should a court determine to give *in camera* protection to some deposition testimony and exhibits received in a government antitrust suit, it should be guided by the considerations leading to the *in camera* reception of evidence at trial. Therefore, a review of these considerations and of the cases where *in camera* proceedings have been allowed is necessary for determining guidelines for restricting the public.

In criminal proceedings the sixth amendment to the Constitution guarantees the criminal defendant a public trial. But occasions arise prompting courts to limit or bar the general public from attending the trial even against the wishes of the accused in order to implement important policies which outweigh the danger of a possible miscarriage of justice resulting from the judicial proceedings being conducted in even partial secrecy.

Portions of a pretrial suppression hearing have been conducted *in camera* in order to preserve the confidentiality of airline "skyjack profiles" used to alert airline personnel and U.S. Marshals.[4] Similarly, to protect the identity

exhibits must be submitted to the court for *in camera* inspection together with the sworn affidavit of the deponent setting forth the grounds under which the deponent moves the court to retain the deposition under seal. If the court finds that the materials and testimony warrant continued protection as information falling within the scope of Fed.R. Civ.P. 26(c)(7), the material will be retained under seal by the clerk of the court. If the materials are found not to warrant such protection, the court will enter an order with notice to the nonparty witness that the materials will be filed publicly upon the expiration of ten days after the date of the entry of the order.

2. Dr. Sidney Fernbach moved for protection under Pretrial Order No. 13 as Amended (entered May 6, 1974) as to questions and answers pertaining to Dr. Fernbach's consultancy to the Energy Fund, Inc. The court issued an order entered August 16, 1974 directing that such testimony be taken and remain sealed until the court could review the transcript to determine whether it should receive continued protection or should be made public. The Burroughs Corporation has moved for continued *in camera* treatment for the testimony of E. Read Peirce who was deposed by the plaintiff August 23, 1974 and certain deposition exhibits. This testimony

was taken under the protection of the court's oral order providing protection similar to that embodied in the October 1, 1974 amendment to Pretrial Order No. 13 as Amended (Transcript of August 16, 1974 at 45). Honeywell Corporation seeks continued sealed treatment for certain deposition testimony and deposition exhibits of Matthew E. Gilfix.

3. The policy of 15 U.S.C. § 30 (1970) was cited in Olympic Refining Co. v. Carter, 332 F.2d 260 (9th Cir.), cert. denied, 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1969) in the court's decision to vacate a protective order which the court had entered in an earlier government antitrust suit. Although the order had protected interrogatories and not deposition testimony, the court stated that the policy of 15 U.S.C. § 30 (1970) compelled it to vacate the protective order and to allow full *disclosure but subjected the* disclosure order to reasonable protection for present trade secrets or presently sensitive information.

4. United States v. Bell, 464 F.2d 667 (2d Cir.), cert. denied, 409 U.S. 991, 93 S.Ct. 335, 34 L.Ed.2d 258 (1972). The court determined that given the continuing hazard to public travel posed by highjackers it was highly desirable and essential to maintain the confidential nature of the profile system. However, where the entire suppression hear-

and safety of witnesses, courts have received evidence *in camera*.[5] And to insure the orderly progression of an accused's trial the court has properly removed disorderly spectators.[6] A criminal defendant's right to a public trial has also been abridged in order to protect a witness from embarrassment, harassment, or loss of reputation where the victim of a sex offense must testify to the lurid details of the crime and the witness is of tender age or cannot be freed from the embarrassment of testifying to material facts of the case.[7]

Even commercial information may be offered some *in camera* protection in the criminal proceeding. Stamicarbon, N. V. v. American Cyanamid Co., 506 F.2d 532 (2d Cir. 1974). During the criminal contempt trial of American Cyanamid Co., Stamicarbon, the owner of a secret process, sought to require the receipt of evidence relating to this trade secret *in camera*. Although the district court judge found that Stamicarbon would suffer irreparable injury from disclosure, he felt that as a matter of law he lacked the power to conduct any of the criminal proceedings *in camera* against the defendant's wishes. Although the court of appeals affirmed the lower court's denial of a preliminary injunction, it advised the district judge that he did have the legal power to conduct limited *in camera* procedures if in the course of the contempt trial he should find that Stamicarbon was likely to suffer irreparable injury and that the protection of its secrets could be achieved with minimal disruption of the criminal proceedings.

Most of the cases addressing the extent to which a trial must be public arise in the context of criminal litigation where the public trial is constitutionally guaranteed. In the context of civil proceedings, the case law, some state statutes, and the Federal Rules of Civil Procedure also speak to the issue.

Rule 77(b) requires that all trials upon the merits shall be conducted in open court. Rule 43 specifies that the testimony of witnesses shall be taken orally in open court, unless otherwise provided by the rules. But the rules themselves do not suggest when a court in its discretion should or may go *in camera* to receive testimony.

ing was conducted *in camera* although the profile testimony consumed only about a minute of the hearing, the court found constitutional error since conducting the whole hearing *in camera* was not justified by the need to protect the travelling public or by other compelling reasons. United States v. Clark, 475 F.2d 240 (2d Cir. 1973).

5. It was held that an accused was not denied a public trial where the court removed all spectators during the testimony of the sole government identification witness where the court found that the witness was in "mortal fear of the 'gang in the courtroom'." United States ex rel. Bruno v. Herold, 408 F.2d 125 (2d Cir. 1969). The court in United States v. Palermo, 410 F.2d 468 (7th Cir. 1969) supported receiving a witness' true name, address and actual place of employment *in camera* where there was an actual threat on the witness' life. Similarly, to protect the identity of and for the safety of an undercover agent who posed as an addict when making narcotic purchases from the defendant, the public was excluded during the agent's testimony. People v. Hinton, 31 N.Y.2d 71, 334 N.Y.S.2d 885, 286 N.E.2d 265 (1972), cert. denied 410 U.S. 911, 93 S.Ct. 970, 35 L.Ed.2d 273 (1973).

6. United States ex rel. Orlando v. Fay, 350 F.2d 967 (2d Cir. 1965).

7. Harris v. Stephens, 361 F.2d 888 (8th Cir. 1966), cert. denied, 386 U.S. 964, 87 S.Ct. 1040, 18 L.Ed.2d 113 (1967) (where the courtroom was closed to spectators during the testimony of the victim) ; United States v. Geise, 158 F.Supp. 821, 17 Alaska 461 (D. Alaska 1958), aff'd 262 F.2d 151 (9th Cir. 1958), cert. denied, 361 U.S. 842, 80 S.Ct. 94, 4 L.Ed.2d 80 (1959) (where during the trial all spectators except members of the press, members of the bar, relatives and close friends of the defendant, and of the prosecuting witness, or any other witness under age and witnesses generally were excluded) ; Melanson v. O'Brien, 191 F.2d 963 (1st Cir. 1951) (where the general public was excluded pursuant to state statute) ; Reeves v. State, 264 Ala. 476, 88 So.2d 561 (1956), cert. dismissed, 355 U.S. 368, 78 S.Ct. 363, 2 L.Ed.2d 352 (1958).

Some state statutes and constitutions have also extended a guarantee of public trial to civil litigation; but they generally provide that trial may be conducted in private under specially enunciated circumstances.[8] Moreover, such statutes have not been read to preclude receiving evidence *in camera* where it is found to be in the interest of justice and the rights of the parties or of the witnesses can not otherwise be protected. This latter, more general judicial concern was the basis for protecting trade secrets in State ex rel. Ampco Metal, Inc. v. O'Neill, 273 Wis. 530, 78 N.W.2d 921 (1956).

In *Ampco* it was held that evidence as to the nature of a party's secret process or formula is appropriately received *in camera* despite a state statute specifying that all trials shall be public except where a cause of a scandalous or obscene nature is at issue. The Supreme Court of Wisconsin ordered the lower court to receive evidence as to the plaintiff's alleged secret process *in camera* because unless the testimony as to plaintiff's claimed trade secrets was taken *in camera*, Ampco would be denied any effective remedy for the wrong it had sustained, assuming the truth of the allegations of its complaint. In short, the court noted that there would be no way to compensate the plaintiff for the harm which would accrue from disclosure; and when measured against the statutory right to a public trial, the court determined it was in the interest of justice to receive the trade secret evidence *in camera*.

In determining that justice required the receipt of the secret process evidence *in camera* despite the state statute, the Wisconsin court placed itself within a common law tradition affording such protection to such trade secrets. The Supreme Court in E. I. Du Pont DeNemours Powder Co. v. Masland, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016 (1917) recognized that where a secret process is alleged, an *in camera* treatment of the evidence supporting the allegation is appropriate until it is either proved not to be a secret process or the court determines that it should be revealed. This protection is accorded because the existence and ownership of a trade secret is said to give rise to a property right which runs from the valuable competitive advantage the secret's owner has created in the form of the trade secret. Fowle v. Park, 131 U.S. 88, 9 S.Ct. 658, 33 L.Ed. 67 (1889); Speedry Chemical Products, Inc. v. Carter's Ink Co., 306 F.2d 328 (2d Cir. 1962); Farrand Optical Co. v. United States, 175 F.Supp. 230 (S.D.N.Y.1959). Courts choose to protect this property right and its attendant competitive advantage with *in camera* proceedings because to disclose the trade secret publicly is said to dedicate it to the world and to destroy the owner's proprietary control and the secret's property value. John T. Lloyd Laboratories, Inc. v. Lloyd Brothers Pharmacists, Inc., 131 F.2d 703 (6th Cir. 1942); American Dirigold Corp. v. Dirigold Metals Corp., 104 F.2d 863 (6th Cir. 1939); A. O. Smith Corp. v. Petroleum Iron Works Co., 73 F.2d 531 (6th Cir. 1934); Wheelabrator Corp. v. Fogle, 317 F.Supp. 633 (W.D.La.1970); Standard Brands, Inc. v. Zumpe, 264 F. Supp. 254 (E.D.La.1967); National Starch Products, Inc. v. Polymer Industries, Inc., 273 App.Div. 732, 79 N.Y.S. 2d 357 (1948). These cited cases employing *in camera* proceedings, however, have mainly involved secret processes, secret formulae, or secret designs.

Although courts have traditionally protected trade secrets, the case law does not articulate what showing should be made by one seeking *in camera* treatment. For guidance on this subject, a

---

8. For example, see West.Cal.Const. art. 1, § 15, West.Cal.Code Civil P. § 124 (West 1954); N.Y.Judiciary Law § 4 (McKinney 1968); Ore.Const. art. 1, § 10, Ore.Rev.Stat. § 1.040 (1971); West.Wis.Stat.Ann. § 256.14 (1971).

look at Federal Trade Commission practice is instructive.

In hearings before the Federal Trade Commission (FTC) certain commercial data has also received *in camera* treatment despite the fact that the FTC deems that these proceedings are required to be public. H. P. Hood & Sons, Inc., 58 F.T.C. 1184, 1186 (1961). To this end the FTC is guided by its rule of practice, 16 C.F.R. § 3.45 (1974), which states that in those unusual and exceptional circumstances when good cause is found documents and testimony offered in evidence may be placed *in camera*. Good cause is shown when the party seeking protection demonstrates that disclosure of the documentary evidence at issue will result in a clearly defined, serious injury to the person or corporation whose records are involved. H. P. Hood & Sons, Inc., 58 F.T.C. 1184 (1961); Graber Manufacturing Co. v. Dixon, 223 F.Supp. 1020 (D.D.C.1963); The Crown Cork & Seal Co., 71 F.T.C. 1714 (1967). The disclosure of a secret formula will almost invariably result in this injury, 58 F.T.C. at 1188–89, but the disclosure of two-and-a-half-year-old sales data will not. 71 F.T.C. at 1714.

■ Although no "good cause" standard such as binds the FTC governs the receipt of trade secret information in a court, this court finds the experience of the FTC, which has regularly handled sensitive commercial data in public proceedings, very useful in formulating its own standard. In this court an applicant will have to demonstrate that disclosure of allegedly confidential information will work a *clearly defined and very serious injury* to his business.

A review of the case law reveals that where public policy outweighs any possibility of a miscarriage of justice or where the protection of a witness can be afforded without prejudice to a defendant's constitutional rights, or in order to prevent irreparable injury, courts in civil and in criminal proceedings have used their discretion to accept evidence *in camera*. The use of such discretion to protect commercial data appears limited to cases where the information sought to be protected is shown to be a "trade secret."

■ In light of the foregoing discussion, the court adopts the position that where commercial information may be subject to protection under Fed.R. Civ.P. 26(c) it will look to determine if its disclosure will work a clearly defined and very serious injury. In so doing the court will be guided by considerations commonly employed when determining if certain information rises to the level of a trade secret such as is embodied in Section 757 of the Restatement of Torts.[9] There, it is suggested

9. The generally accepted definition of a trade secret is found in Section 757 of the Restatement of Torts. There it is suggested that a trade secret is any "formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it . . . . It differs from other secret information in a business . . . in that it is not simply information as to single or ephemeral events in the conduct of the business, as, . . . the amount or other terms of a secret bid for a contract or the salary of certain employees, or the security investments made . . . or the date fixed for the announcement of a new policy or for bringing out a new model . . . ." It is suggested that a secret be in continuous use in the business and may relate to the production of goods or to the sale of goods such as a code for determining discounts, rebates, or a list of specialized customers. The Restatement continues that a trade secret must be secret, communicated to others under pledge of secrecy. It then lists the factors of secrecy to be considered when determining if given information should be treated as a trade secret which are set forth in the text above. The Restatement definition has been supported in both state and federal courts. Speedry Chem. Prod., Inc. v. Carter's Ink Co., 306 F.2d 328 (2d Cir. 1962); Wilson Certified Foods, Inc. v. Fairbury Food Prod., Inc., 370 F.Supp. 1081 (D.Neb.1974); Simplex Wire & Cable Co. v. Dulon, Inc., 196 F.Supp. 437 (N.D.N.Y.

that factors of secrecy to be considered when determining if given information ought to be treated as a trade secret are:

(1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

If disclosure is shown to work a clearly defined and very serious injury, continued sealed protection of the information will be maintained until the requirements of the fair administration of justice overrule this protection. We now turn to the instant motions before the court.

■ Dr. Sidney Fernbach received protection under Pretrial Order No. 13 as Amended (entered May 6, 1974) in the form of an order entered August 16, 1974 temporarily sealing portions of testimony pertaining to Dr. Fernbach's consultancy to the Energy Fund, Inc., a mutual fund. The testimony involved discusses in general terms Dr. Fernbach's opinions related to the Energy Fund regarding growth and developments in the electronic data processing (EDP) industry. Dr. Fernbach provides his services on a commercial basis and no representation has been made that his opinions are disclosed to or must be maintained by the client on a confidential basis. Accordingly, this court finds that Dr. Fernbach's testimony does not in the first instance rise to confidential commercial information for which protection is merited under Fed. R.Civ.P. 26(c)(7).

■ The Burroughs Corporation has moved for continued *in camera* treatment for the testimony of E. Read Peirce who was deposed by the plaintiff August 23, 1974. This testimony was taken under the protection of the court's oral order of August 16, 1974 providing for protection similar to that embodied in the October 1, 1974 amendment to Pretrial Order No. 13 as Amended (Transcript of August 16, 1974 at 45). Protection is also sought for deposition exhibits revealing principally for the years 1960–1972 revenue, sales, and manufacturing data. While the court finds that this is business information not readily available to the public, it does not find that any of this data should receive continued sealed treatment. Burroughs alleges that the data here in question is "maintained as highly secret by Burroughs" and that such information has been "distributed only to a limited group of key management personnel within the corporation," but Burroughs does not represent that this is information maintained within Burroughs or communicated among Burroughs employees under a pledge of secrecy. Although these compilations may be circulated only to key personnel, no representation is made that the data is not available to other employees or is not known to many Burroughs employees involved in Burroughs' sales and production departments. Burroughs' general allegations of confidentiality do not demonstrate measures taken to guard the secrecy of this data so that it may be justly characterized as secret.

Burroughs does allege that the information involved would be valuable to its competitors, but this suggestion is made in only general and in hypothetical terms. None of this data is current; it covers the years 1960–1972. Burroughs alleges that an analysis of and an extrapolation from this data would reveal its

product and marketing strategy, but no showing is made that Burroughs' marketing strategy would not be evident to or open to extrapolation from earnest observation of the EDP industry or of Burroughs' activities in that industry. The information at issue here is not an open presentation of Burroughs' current marketing strategies; its value as a matrix with which to construct Burroughs' present strategies is too speculative.

■ Honeywell Corporation seeks under Pretrial Order No. 13 as Amended (entered Oct. 1, 1974) continued sealed treatment for (1) statistical tabulations for a 15 year period ending in 1972 which reveal the number and value of computer systems products and services manufactured, sold, leased, shipped, installed, and returned and the resulting revenues; (2) deposition testimony of Matthew E. Gilfix discussing the foregoing information and revealing 1973 export and import sales figures and 1973 domestic sales figures; (3) two sets of financial reports for a 12 year period ending in 1972 showing gross profits for certain Honeywell computer systems, products, services, and profit and loss statements for the same time period for certain computer operations; (4) a list of 63 Honeywell computer customers, dated March 1967, giving the name and address of each customer and the model number, serial number, and record number, and a description of the computer configurations leased at each location, the lease date, the age on the lease and the total acquisition costs as of March 1967; and (5) an internal business planning report, "IBM Watching: A Requirement for the Future," which discusses observations of IBM's actions in the computer industry and suggests some future marketing approaches and market explorations for Honeywell. Honeywell's counsel have suggested that the report is dated 1970. Again, the court does not find that this testimony

and the deposition exhibits merit continued sealed treatment.

Honeywell submits that the data at issue here has not been made available to persons outside Honeywell's employ except as it has been produced under protective order in this suit and that armed with such information "competitors of Honeywell could extrapolate virtually every significant aspect of Honeywell's EDP business" and could "deduce Honeywell's overall strategic plans in the EDP industry to varying degrees." But Honeywell's papers only vaguely describe the confidential status Honeywell has accorded this information.

The value of this information is presented not in terms of its value to Honeywell but in terms of its possible, if not tenuous, value to Honeywell's competitors. Honeywell asserts that the gross profits data for certain computer systems, products, and services for the period ending 1972 "would permit a competitor to detect the strengths and weaknesses within Honeywell's computer product lines and to devise business attack plans which would target into the most attractive areas of Honeywell's business"; disclosure of the product line data up to 1972 "would allow a competitor to fully model the mix of Honeywell's computer business to detect its strengths and weaknesses"; disclosure of the business planning report would provide a competitor with an "intimate understanding of how Honeywell has devised its marketing strategy in the past" and would indicate "strategy Honeywell might still pursue in the future"; and disclosure of the customer list dated 1967 "would permit a competitor to size up such accounts, most of which remain as present Honeywell customers, and structure a proposal at the most strategically opportune time in view of the age of the lease." An unscrupulous salesman, alleges Honeywell, might attempt to use the information to imply weaknesses in Honeywell for entering

sales and leaseback transactions to finance its business.

None of this data is current; it reveals directly little, if anything at all, about Honeywell's current operations. By a fair reading of Honeywell's own representation, the value of this data to Honeywell's competitors is speculative. To reveal any of this information would not erode the cornerstone of Honeywell's competitive foundation.

Certainly, a corporation might expectedly seek to maintain the secrecy of a business planning report. But, here, the report is five years old. Rather than revealing the market stratagem Honeywell has adopted, it discusses options Honeywell might explore in light of the EDP industry generally and in light of IBM's own actions in the industry. The nature of the strategy revealed in the report suggests that another informed observer of the EDP industry would arrive at the same or similar projections and suggestions.

Although a customer list may be a valuable trade asset, the current nature of the list attributes to its value. This list is dated 1967. While the lease commencement dates are given, the total lease terms are not listed so there can be no assumption that the list reflects current leases. There has been no demonstration that the list has been maintained under pledge of secrecy or that it is not readily reconstructable by anyone in Honeywell's sales, production or finance departments. Generally, where lists have been accorded trade secret status, emphasis has been placed on the non-availability of an informative source which tends to divulge likely prospects or upon the amount of special advertising, effort, and screening expended to construct such a list. Arnold's Ice Cream Co. v. Carlson, 330 F.Supp. 1185 (E.D.N.Y.1971); Servisco v. Morreale, 312 F.Supp. 103 (E.D.La.1970); Inland Rubber Corp. v. Triple A Tire Service, Inc., 210 F.Supp. 880 (S.D.N.Y. 1962); Town & Country House & Home

Service, Inc. v. Newbery, 3 N.Y.2d 554, 170 N.Y.S.2d 328, 147 N.E.2d 724 (1958). It appears reasonable that the EDP industry knows the general industry groups likely to use computer products. Movant's papers do not reveal that this list represents effort which has isolated these special customers from the general course.

In light of the foregoing review, Honeywell's request for continued protection of its data is denied.

Honeywell is directed to file the Gilfix deposition testimony and related exhibits for which sealed treatment was sought and Burroughs is directed to file the Peirce deposition testimony and related exhibits for which sealed treatment was sought within ten days following the expiration of ten days from the date of the entry of this opinion. The court is in possession of the original Fernbach deposition and its sealed portions; accordingly, it will file this deposition within ten days following the expiration of ten days from the date of the entry of this opinion.

So ordered.