UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.

No. 69 Civ. 200 (DNE).

United States District Court,
S. D. New York.

Feb. 5, 1979.

See also D.C., 71 F.R.D. 88.

U. S. Dept. of Justice, Antitrust Division, for plaintiff United States.

Cravath Swaine & Moore, New York City, for defendant IBM.

## MEMORANDUM AND ORDER

EDELSTEIN, Chief Judge:

The United States of America [hereinafter government], plaintiff in this civil antitrust action, has moved the court for an order directing John Diebold [hereinafter Diebold] to produce for inspection and copying certain documents under his custody and control that had been the subject of a deposition subpoena duces tecum and ad testificandum served on him on October 26, 1978.

Diebold, a nonparty who is scheduled to testify as an expert witness for defendant International Business Machines Corp., [hereinafter IBM], is chief executive and sole owner of John Diebold, Inc., which owns 100% of the stock of The Diebold Group, Inc. Diebold is also chairman of the board of the latter firm. Generally speaking, divisions within The Diebold Group perform consulting work, generating "proposals" for studies and, ultimately, "client studies" for the firm's clients, which include both vendors and purchasers of electronic data processing products and services.

Diebold's response to the subpoena included production of a number of such client studies pursuant to a letter agreement dated December 16, 1978, between counsel for plaintiff and defendant. That agreement, in part, called for

> "Those client studies performed by the staff of The Diebold Group and affiliated domestic companies in which John Diebold has had substantive participation in (a) determining or outlining the topic of the study to be done; (b) discussing the study during its progress; (c) either orally or in writing, editing or reviewing drafts of the study; or (d) reviewing the final study before or after it was delivered to the client."

The government by its present motion now presses for production of "*all* client studies (and proposals relating thereto) relating to EDP created by The Diebold Group, Inc. for users or vendors" (emphasis supplied) from 1961 to the present, located in the firm's domestic files and not previously produced. It is to this further demand, for client studies with respect to which Diebold claims he has had no "substantive participation," that he objects.

Having made timely objection under Rule 45(d)(1), Fed.R.Civ.P., to the government's subpoena duces tecum, Diebold now opposes the motion to compel production on two grounds. First, he argues that the demanded documents are of minimal relevance to his testimony because they were neither authored nor reviewed by him, and therefore not subject to production under the law of this case. Second, he contends that the burden of production, in terms of the sheer expense of compliance as well as the compromise of confidences of Diebold's firm and its clients, so outweighs plaintiff's need for the documents that production should be denied.

Diebold does not argue that he is not in "possession, custody, and control" of the demanded documents. His position as officer in the two corporations, as noted above, clearly brings him within the rule established by this court in its memorandum opinion of April 6, 1976, *United States v.*

*International Business Machines Corp.*, 71 F.R.D. 88 (S.D.N.Y.1976) (deciding motion of Robert L. Brueck).

Rule 45(d)(1), Fed.R.Civ.P., authorizes production from a nonparty witness of "books, papers, documents, or tangible things which constitute or contain matters within the scope of the examination permitted by Rule 26(b) . . . ." Rule 26(b) establishes as the broad compass of federal civil discovery "any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . .. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." The subpoena duces tecum directed at Diebold comes as part of a limited program of depositions by plaintiff of defendant's trial witnesses, the principal object of which is to enable the plaintiff to prepare its cross-examination of defendant's witnesses. *See* Order of July 28, 1977; Stipulation and Order of June 7, 1978. For this reason, the focus of the inquiry must be the relevance of the documents sought to Diebold's testimony.

The court is convinced that the plaintiff has demonstrated this logical nexus. For example, the government in its memorandum claims that Diebold relies heavily on his staff for the data which underlie his expert opinions. Second, Diebold places the name of his company—that is, his own name—behind each client study generated by his staff, regardless of the extent to which he may have participated in that study. The evidentiary significance of Diebold's "substantive participation," or absence thereof, in the client studies is not ripe for consideration at this time. What is clear at this point is that the partial production undertaken thus far by Diebold in response to the subpoena has not exhausted his obligation thereunder.

■ Much of Diebold's opposition is premised on events respecting the government's expert witness, Frederic G. Withington, who testified in this case in July and August, 1977. The government had sub-mitted a memorandum on May 11, 1977, opposing defendant's motion to compel production of documents authored by Withington's firm but which Withington himself had neither written nor reviewed. That defendant's motion was unsuccessful is apparent from the trial transcript at pages 58188–89 (August 11, 1977), in which the court made a tentative ruling that further discovery would not be ordered. Diebold now offers this as the law of this case, although he concedes the court rendered no "definitive expression" of its views. Thus, he urges, since his position is similar to that of Withington, the motion should be denied.

The simple answer to Diebold's contention is that he and Withington are not similarly situated. For example, Withington was not an officer of his firm but rather a consultant operating with a great degree of independence. This fact has significance not just for the question of "custody and cortrol," but for the question of relevance as well. Diebold, by contrast, is the legal and functional head of his firm. Plaintiff has pointed to a number of passages in Diebold's deposition that demonstrate he receives the client studies, has an opportunity to review them at will, and regularly communicates with supervisors of those who do author the studies. To be sure, Diebold's affidavit controverts the extent of his personal involvement in and reliance upon the documents, but there is too much in the record before this court to deny as a matter of law the relevance of even those documents that he maintains he has not authored or reviewed.

Diebold opposes the motion on the ground of the heavy burden of compliance. Insofar as he relies on the expense and inconvenience of production to characterize the subpoena as "unreasonable and oppressive," Rule 45(b), the court is not moved to exercise its power under that provision to quash or modify the subpoena. While not unmindful of the imposition of an extensive subpoena duces tecum, the court has often declared that the public interest in a thorough search for the truth in this significant antitrust case outweighs, in the large ma-

jority of instances, such private inconveniences. *See, e. g.,* 71 F.R.D. 88 (S.D.N.Y. 1976); 66 F.R.D. 186 (S.D.N.Y.1976). Diebold also relies on the potential exposure of client confidences as a ground of opposition. Diebold has obtained client consent for those studies produced thus far, *see* Diebold Affidavit at ¶ 8. His unelaborated statement that to continue use of the consent procedure "would impose a crippling burden upon the operation of The Diebold Group, Inc.," *id.* at ¶ 27, does not persuade the court that relief beyond that presently available under Pretrial Order No. 13, as amended,[1] is required.

For these reasons, plaintiff's motion is granted. John Diebold is directed to make available for inspection and copying by authorized personnel of the United States Department of Justice, at the premises or facilities of The Diebold Group, Inc. or other designated facilities all client studies (and proposals relating thereto) relating to EDP created by The Diebold Group, Inc. for users or vendors during the years 1961 to the present located in the domestic files of The Diebold Group, Inc. which have not been previously produced.

SO ORDERED.

See also, D.C., 81 F.R.D. 625.

---

1. *See generally United States v. International Business Machines Corp.,* 67 F.R.D. 40 (S.D.N.Y.1975).