**Margaret E. DEFORD and Malcolm H. Deford**

v.

**SCHMID PRODUCTS COMPANY, A DIVISION OF SCHMID LABORATORIES, INC.**

**Civ. No. HAR–85–4195.**

United States District Court, D. Maryland.

Dec. 18, 1987.

Nicole Schultheis, Michael Pretl, Pretl & Erwin, P.A., Baltimore, Md., Elizabeth B. Tong, Henry, Hairston & Price, Easton, Md., for plaintiffs.

Phillips P. O'Shaughnessy, Paul W. Spence, Sandbower, Gabler, & O'Shaughnessy, P.A., Baltimore, Md., for defendant.

## MEMORANDUM

CATHERINE C. BLAKE, United States Magistrate.

Now pending before me are certain aspects of the Motion to Compel Production of Documents and the Motion to Compel Answers to Interrogatories filed by the plaintiffs on October 20, 1986 and November 4, 1986, respectively. The history of these disputes is set forth below.

### I. *Background*

On October 11, 1985, Margaret E. Deford and her husband filed a complaint in this Court alleging that the use of a Saf–T–Coil intrauterine device ("IUD") caused Mrs. Deford to develop pelvic inflammatory disease ("PID"), necessitating a hysterectomy and related surgical procedures which rendered her infertile. Damages are sought from Schmid Products Company on theories of negligence, strict liability and fraudulent misrepresentation, related to Schmid's alleged failure to test its product adequately and to warn physicians and patients of various alleged risks of harm.

On October 20, 1986, the plaintiff filed a Motion to Compel Production of Documents. Many of the issues raised in that motion have been resolved between the parties or by other rulings of this Court.

The most significant remaining request is No. 4, which requests Schmid:

> [t]o produce for inspection and copying the *originals* of all documents identified in the attached Exhibit List by their "Schmid No.," that is, the number stamped at the bottom right hand corner of each page. All original attachments and enclosures identified therein are also requested.

Also remaining in contention is the plaintiffs' Request No. 5, that Schmid produce for "inspection and copying the transcripts of all depositions and trials relative to the Saf–T–Coil IUD ...". (See, Plaintiffs' Motion to Compel, Exhibit A).

In its response to the plaintiffs' Request for Production of Documents (attached as Exhibit B to the plaintiffs' Motion to Compel), Schmid explained that the numbers stamped on the documents plaintiffs' counsel sought copies of were production numbers placed on the documents as they were turned over in discovery in the case of *Baysinger v. Schmid Products Co.,* Law No. 9973, in the Circuit Court for Worcester County. Schmid claimed it would violate the protective order entered by Judge Theodore Eschenburg in *Baysinger* to turn over the documents in their unrestricted form to plaintiffs' counsel in the *Deford* case. Schmid further offered to allow plaintiffs' counsel to review the original documents but only after a protective order like that in *Baysinger* was entered by the Court in this case. Schmid objected to the request for all depositions and trial transcripts on the grounds of overbreadth and undue burden. Schmid further represented that some of the transcripts were subject to protective orders in other cases and suggested that plaintiffs' counsel in this case could contact plaintiffs' counsel in the other cases in order to obtain the transcripts. Finally, Schmid incorporated by reference its application for a protective order filed in *Moser v. Schmid Products Company,* Civil No. HAR–83–867.[1]

The plaintiffs' Motion to Compel argued that the documents identified were limited in number and relevant to the plaintiffs' case. The Defords further argued that the burden was on the defendant to prove its need for a protective order as to each document, and that nothing in any other court's protective order precluded the defendant from disclosing its own documents to the plaintiffs in this case. As to the transcripts of Schmid witnesses in other litigation, the Defords argued they were relevant and more easily produced by the defendant than obtained by the plaintiffs on a piecemeal basis from other plaintiffs' counsel. The Defords pointed out the possible use of prior testimony for impeachment purposes and also the economy and convenience of avoiding repetitive depositions.

On November 4, 1986, the plaintiffs filed a Motion to Compel answers to certain interrogatories they had served upon the defendant Schmid. Most of those disputes also have been resolved between counsel or by the Court. The one relevant to the issues in the request for documents is interrogatory No. 3, which asked Schmid to identify all deposition and trial transcripts of testimony by "past and present agents and employees" of Schmid and related companies concerning the Saf–T–Coil IUD. Schmid refused to list such transcripts on the grounds of overbreadth. Also at issue was Interrogatory No. 19, asking for information concerning any reports received by Schmid that associated the Saf–T–Coil with pelvic abscesses.

On November 6, 1986, Schmid filed its Response to the plaintiffs' motion to compel related to the production of documents. Schmid asserted reliance on the protective orders entered in *Baysinger* and in *Younker v. Schmid Products Co.,* Law No. 13406 in the Circuit Court for Washington County, and argued that its demonstration of entitlement to a protective order in other cases, as well as the dictates of courtesy and comity, required a denial of the plain-

---

1. *Moser* is one of a number of Saf–T–Coil cases pending in this Court before the Honorable John R. Hargrove. A motion for summary judgment in *Moser* has been filed by Schmid and opposed by plaintiffs' counsel.

tiffs' request No. 4. Schmid repeated its objection to the request for transcripts as overbroad and also asserted that virtually all the transcripts were covered by protective orders issued by various federal and state courts restricting the use of the discovery and trial transcripts to the particular cases in their jurisdictions. Schmid asserted that a request for modification must be made to the courts which issued the protective orders.

A Local Rule 34 certification was filed on December 3, 1986. On June 4, 1987, the plaintiffs' Motions to Compel were referred to the undersigned magistrate for resolution. After a hearing on July 8, 1987, I issued a letter Order requiring the plaintiffs to provide to the defendant by July 10, 1987 a list of any documents, in addition to the 146 previously identified, as to which they sought access unrestricted by the terms of any protective order.[2] Defense counsel was to file a memorandum by July 31, 1987 specifically identifying which documents should not be disclosed except under protective order, stating reasons as to each document.

Plaintiffs' counsel provided the expanded list of documents, for a total of 191 specified items, as required. When counsel were unable to agree upon the terms of the protective order, however, defense counsel declined to address the issue of the 191 items in dispute, for fear of waiving some rights under the *Baysinger* order. After another hearing on September 11, 1987, I entered a Memorandum and Order which directed defense counsel to identify those documents which he believed should be covered by a protective order no later than September 21, 1987, and provide his justification for such an order as to each document. Documents that defense counsel agreed did not require a protective order were to be provided by October 9, 1987. As to interrogatory No. 3 and document

request No. 5, defense counsel was directed to furnish a list of the transcripts by October 9, 1987, from which plaintiffs' counsel was to identify those items she wanted copied. Defense counsel then was to have an opportunity to advise the Court of any particular transcript he did not wish to produce.[3]

Related to the protective order dispute was plaintiffs' interrogatory No. 19 which requested Schmid to identify reports it had received regarding any association of the Saf–T–Coil IUD with pelvic abscesses. To the extent that Schmid sought a protective order before turning over such documents, Schmid was directed to provide a list of those documents and the reasons justifying entry of a protective order.

On September 22, 1987, Schmid sent to plaintiffs' counsel, copy to the undersigned, a letter intended to comply with my Memorandum and Order of September 15, 1987. Schmid listed by number the documents requested by plaintiffs which it believed deserved protection. The documents were briefly described by category (e.g., "Drs. Roland's and Kaufman's clinical studies," "evaluation of whether Saf–T–Coil should be replaced at certain annual frequency and recommendation re same"). (See letter attached as Exhibit 1 to Plaintiffs' Memorandum in Opposition to Protective Order).

As grounds for a protective order Schmid argued first, that plaintiffs' counsel wanted "unfettered distribution rights to genuinely confidential material" so that they could "up the defense cost ante in the hopes of circulating documents nationally and networking them, while perhaps harvesting other meretricious claimants as part of this mercantilism." Schmid then asserted that it had a "legitimate, global, interest in being free of essentially pestiferous litigation," citing *Milsen Co. v. Southland Corp.*, 15 F.R.Serv.2d 1268 (N.D.Ill.1972). (*Id.*). Second, Schmid argued that the Saf–

---

**2.** I also noted that the parties at that time intended to submit an agreed upon protective order covering all Saf–T–Coil cases in this Court within the next few days.

**3.** On August 18, 1987, the plaintiffs filed a Motion for Sanctions in connection with the de-

fendant's failure to respond to the list of 191 items. The motion was denied on September 30, 1987, but that motion and the defendant's response, filed September 1, 1987, contain a relevant history of the protective order in *Baysinger.*

T–Coil IUD was a valuable asset, and that its private, confidential documentary record had been considered part of that asset "in the marketplace of those offering money to buy [it]." Included in the category of this valuable asset were clinical studies, including drafts, patient records, and Schmid's correspondence with physicians, documents "dealing with asserted risks and the candid evaluation of them," "[u]npublished dealings with the FDA by Schmid," and complaint files maintained by Schmid. Schmid also asserted a privacy interest on behalf of the patients whose names appeared in the documents underlying the clinical studies. (*Id.*). No affidavits or copies of any of the disputed documents were provided to the Court.

On September 30, 1987, the plaintiffs filed a Memorandum in Opposition to Protective Order. The plaintiffs stated that they did not wish to learn the identities of any individual patients who either participated in a clinical study or were the subject of a complaint letter. While consenting to redaction of patient names, the plaintiffs argued that there were no similar privacy concerns warranting redaction of physicians' names and addresses from the underlying documents. The Plaintiffs rebutted Schmid's confidential asset argument by pointing out that the Saf–T–Coil IUD has not been marketed in the United States since 1982, that the defendants had not met their burden of showing specific examples of competitive harm that would result from disclosure of the documents, and that the possibility of plaintiffs' counsel sharing information with other attorneys was not a proper justification for a protective order.

On October 6, 1987, Schmid's counsel wrote to the Court asserting that Schmid was raising a trade secret claim and pointing out that the motion for a protective order in the *Moser* case had been incorporated by reference in this case. (*See,* letter attached as Exhibit 1 to Plaintiffs' Supplemental Memorandum in Opposition to Protective Order and in Support of Open Discovery). The *Moser* papers were supported by two affidavits prepared in 1984, one from Samuel Baker and one from Deborah Bing, which will be considered in ruling on this Motion.

On October 23, 1987, the plaintiffs filed a Supplemental Memorandum in Opposition to Protective Order and in Support of Open Discovery. Various documents were attached. The plaintiffs again argued that Schmid had failed to meet its burden and specifically relied on the case of *Waelde v. Merck, Sharp and Dohme,* 94 F.R.D. 27, 28–29 (E.D.Mich.1981), which sets forth the elements of a trade secret claim. The plaintiffs further argued that Schmid had produced only an incomplete list of the transcripts of witnesses' testimony and that Schmid was not justified in refusing to produce all transcripts. The plaintiffs pointed out that no protective orders had been provided to the court which indicated that Schmid itself was precluded from producing transcripts in related cases.

On November 2, 1987, the defendant filed a Reply Memorandum to Plaintiffs' Opposition to Protective Order. Schmid argued that the plaintiffs had not shown the Saf–T–Coil was in fact unreasonably dangerous and reasserted the value of its documents, arguing that the Baker and Bing affidavits before the Court demonstrate that the criteria set forth in *Waelde* do apply.

For the reasons set forth below, I will deny Schmid's Motion for a Protective Order as to the documents presently in dispute, and I will direct Schmid to allow plaintiffs' counsel to review all deposition and trial transcripts listed in its letter of October 9, 1987, except where another court's protective order specifically precludes such disclosure by Schmid.

## II. *Protective Order*

 Rule 26(c) of the Federal Rules of Civil Procedure provides that:

... for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or

be disclosed only in a designated way. . . .

The burden is on the party requesting a protective order to demonstrate that (1) the material in question is a trade secret or other confidential information within the scope of Rule 26(c), and (2) disclosure would cause an identifiable, significant harm. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir.1986); [4] *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F.Supp. 866, 891 (E.D.Pa.1981); *Waelde v. Merck, Sharp & Dohme, supra*, 94 F.R.D. at 28; *United States v. Exxon Corp.*, 94 F.R.D. 250, 251 (D.D.C.1981), *United States v. Hooker Chemicals*, 90 F.R.D. 421, 425 (W.D.N.Y.1981). Where a business is the party seeking protection, it will have to show that disclosure would cause significant harm to its competitive and financial position. That showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm. *Cipollone v. Liggett Group, supra*, 785 F.2d at 1121; *Waelde v. Merck, Sharp & Dohme, supra*, 94 F.R.D. at 28, *United States v. Exxon Corp., supra*, 94 F.R.D. at 251, *United States v. Hooker Chemicals, supra*, 90 F.R.D. at 425, *Parsons v. General Motors*, 85 F.R.D. 724, 726 (N.D.Ga. 1980).

■ The parties agree that the criteria for determining whether information is a trade secret are set forth in *Waelde v. Merck, Sharp & Dohme, supra*, which in turn relied on the elements in the Restatement of Torts, Section 757. The factors to be considered are:

(1) The extent to which the information is known outside his business; (2) The extent to which it is known by employees and others involved in his business; (3) The extent of measures taken by him to guard the secrecy of the information; (4) The value of the information, to him or his competitors; (5) The amount of effort or money expended by him in developing the information; (6) The ease or difficulty with which the information could be

properly acquired or duplicated by others.

94 F.R.D. at 28–29. *See also, United States v. IBM*, 67 F.R.D. 40, 46 n. 9 (S.D.N.Y.1975). Defendant's counsel asserts that the Baker and Bing affidavits incorporated in this case by reference demonstrate that each of *Waelde's* criteria apply. (See, Reply Memo to Plaintiffs' Opposition to Protective Order, at 1). Several of the factors in *Waelde*, however, are not addressed by those affidavits. The affidavits recite that Schmid considers its research confidential but provides no specific information regarding the clinical study files sought in this case, such as the extent to which Schmid employees and outside persons already have access to the information, or the particular measures taken by Schmid to safeguard its confidentiality. *See, Parsons v. General Motors, supra*, 85 F.R.D. at 726; *United States v. IBM, supra*, 67 F.R.D. at 47–49. Nor do the affidavits explain why complaints received from outside sources should be considered part of Schmid's confidential research.

■ Even assuming that the information Schmid seeks to protect generally falls within the category of confidential commercial information, only a speculative showing of potential harm has been made. The bulk of the documents sought are over ten years old. Schmid has not marketed the Saf-T-Coil in the United States since 1982. Ms. Bing's affidavit asserts that in 1980, before the Saf-T-Coil was voluntarily withdrawn, Schmid received an offer of $1,200,-000 from a prospective purchaser of the SAf-T-Coil. It was her understanding that the offeror wished to acquire information about clinical studies, complaints and related documentation "as part of its asset acquisition." No attempt was made, however, in Ms. Bing's affidavit to assess the relative value of such documents, as compared to the patents, trademarks, inventory and customer lists which were also part of the offer and presumably are a much more substantial part of the Saf-T-Coil "asset." Moreover, while the affidavit asserts that other discussions about sale of the Saf-T-

**4.** Cited in *Cipollone v. Liggett Group, Inc.*, 822 F.2d 335, 343 (3rd Cir.1987).

Coil occurred after 1982, there is no indication of any current negotiations or any definite plan to resume marketing the Saf–T–Coil. Both the Baker and Bing affidavits were submitted in 1984 and have not been updated.

■ While staleness of the information sought to be protected is not an absolute bar to issuance of an order, it is a factor which must be overcome by a specific showing of present harm. *See, Zenith Radio Corp. v. Matsushita, supra,* 529 F.Supp. at 891, and cases cited therein; *Parsons v. General Motors, supra,* 85 F.R.D. at 726. Speculative allegations of injury from the disclosure of years-old information are not sufficient to warrant issuance of a protective order. *United States v. Exxon, supra,* 94 F.R.D. at 252; *United States v. IBM, supra,* 67 F.R.D. at 47–49. While a document-by-document analysis is not required, it is relevant that Schmid failed to provide this Court with a single document as a concrete example of particular harm. *Cipollone v. Liggett Group, supra,* 822 F.2d at 346.

The Baker affidavit also argues that protection of the identities of patients involved in the clinical studies is essential in order to encourage the continuation of such research. The plaintiffs, however, have consented to the redaction of patients' names and addresses, which should be sufficient to protect those valid privacy interests. *See, Farnsworth v. Proctor & Gamble Co.,* 758 F.2d 1545 (11th Cir.1985).

■ The plaintiffs' primary argument in favor of disclosure is their desire to share information with other litigants and their counsel. This is an appropriate goal under the Federal Rules of Civil Procedure, which are intended "to secure the just, speedy, and inexpensive determination of every action." Rule 1. *See, Cipollone v. Liggett Group Inc.,* 113 F.R.D. 86, 91 (D.N.J.1986), *aff'd.* 822 F.2d 335, 345 (3rd Cir.1987).

Sharing discovery materials may be particularly appropriate where multiple individual plaintiffs assert essentially the same alleged wrongs against a national manufacturer of a consumer product. *Ward v. Ford Motor Co.,* 93 F.R.D. 579, 580 (D.Colo.1982); *Williams v. Johnson & Johnson,* 50 F.R.D. 31, 32 (S.D.N.Y.1970); *see also United States v. Hooker Chemicals, supra,* 90 F.R.D. at 426 [5].

The reasoning in *Milsen Co. v. Southland Corp., supra,* relied on by Schmid, that counsel's intention to share discovery constitutes good cause for a protective order, is not supported by recent case law, including a case in the same circuit as the *Milsen* court. *See Wilk v. American Medical Association,* 635 F.2d 1295, 1299 (7th Cir.1980); *see also,* unpublished opinions of Magistrate Bernard Weisberg and Judge Charles P. Kocoras, attached to Exhibit B of Plaintiffs' Memorandum in Opposition to Protective Order.

Schmid argues that because it has won jury verdicts in the three cases that have gone to trial, and because plaintiffs' expert did not label the Saf–T–Coil "unreasonably dangerous," a protective order is justified.[6] The plaintiffs' case, however, is not patently frivolous, and it is not appropriate for this court to prejudge the ultimate merits of the Defords' claim.

It should be made clear that I am not disapproving the general practice in complex cases of entering an umbrella protective order at the beginning of the discovery process. *See, Cipollone v. Liggett Group, supra,* 822 F.2d at 343. Any such order, however, must preserve the plaintiffs' right to challenge the designations of individual documents and require the defendant to meet its burden of showing good cause for continued protection. That is essentially what the plaintiffs have done in these proceedings.

Schmid also raises the argument that unrestricted disclosure of the documents

---

**5.** The goal of sharing information with other litigants is separate from any First Amendment argument that the public in general has a right to information produced during the discovery process. A general First Amendment argument is precluded by the Supreme Court's opinion in

*Seattle Times Company v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

**6.** Schmid does not identify the number of cases it has settled before trial.

sought by the plaintiffs in this case might be in conflict with protective orders issued by other courts. The only two which have been presented to me, however, expressly disclaim any effect on other cases or any attempt to restrict Schmid's right to further disclose the documents it has produced. (*See, Baysinger* Protective Order and letter of Judge Eschenburg attached as Exhibit A and B to Defendant's Response to the Plaintiffs' Motion for Sanctions; *Younker* Protective Order and letter of Judge Fred C. Wright III, attached as Exhibit 2 to Schmid's Response to Motion to Compel).

### III. *Transcripts*

 Plaintiffs' request to review, either in Baltimore or in New Jersey, the transcripts listed by Schmid in its letter of October 9, 1987, (attached As Exhibit 2 to Plaintiffs' Supplemental Memorandum) is reasonable and will be granted, except to the extent that Schmid can show the existence of another court's protective order specifically barring Schmid from disclosing such transcripts. *See, Carter–Wallace, Inc. v. Hartz Mountain Industries, Inc.,* 92 F.R.D. 67 (S.D.N.Y.1981).

### IV. *Conclusion*

Under Rule 72 of the Federal Rules of Civil Procedure, objections to my Memorandum and Order may be filed with the Honorable John R. Hargrove within 10 days after the entry of the Order. During a telephone conference call on another discovery issue, defense counsel requested that, if I ruled in favor of the plaintiffs' position, I delay the date of production so that Schmid has an opportunity to seek review. Accordingly, no unrestricted production of documents will be required until January 11, 1988. If Schmid files such objections, I will consider my Order, insofar as it requires production of documents free of any protective order, stayed until Judge Hargrove rules.

Plaintiffs' counsel did not object to the delay but requested that the documents be produced in any event under an interim Protective Order pending the outcome of any objection by Schmid. Accordingly, so

that discovery may continue, I am today entering an umbrella Protective Order similar to that proposed by Schmid as an attachment to its letter of September 22, 1987. Any additional documents due from either side, and specifically those on which Schmid wishes to rely in answer to any of the plaintiffs' interrogatories, should be produced no later than January 11, 1988.

A separate Order will be entered.