THIS OPINION IS A
PRECEDENT OF THE
TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

Faint/Stanley

March 25, 2019

Cancellation No. 92066233

*United States Polo Association*

*v.*

*David McLane Enterprises, Inc.*

**M. Catherine Faint,**
**Interlocutory Attorney**

This case now comes up on Petitioner's motion, filed August 22, 2018, to challenge Respondent's designations of certain of its produced documents and interrogatory responses as "Confidential" or "Confidential – For Attorneys' Eyes Only (Trade Secret/Commercially Sensitive)" under the Board's Standard Protective Order. The motion is fully briefed.[1]

## 1. Background

On June 15, 2018, Respondent served responses and objections to Petitioner's first set of document requests (Nos. 1-12) and first set of interrogatories (Nos. 1-18).[2] On the same day, Respondent produced responsive documents, Bates labeled DME0001-

---

[1] In reaching this decision, all of the parties' arguments and evidence were carefully considered but there is no need to restate them all in this order. *See Guess? IP Holder L.P. v. Knowluxe LLC*, 116 USPQ2d 2018, 2018 (TTAB 2015).

[2] 22 TTABVUE 2-3, ¶ 3.

DME00154.[3] Pursuant to the Board's Standard Protective Order,[4] Respondent designated all produced documents "Confidential – For Attorneys' Eyes Only (Trade Secret/Commercially Sensitive)."[5]

On June 19, 2018, Petitioner complained to Respondent about its confidentiality designations, stating that "we need to be able to go over the discovery responses with our client's in-house counsel."[6] On July 2, 2018, Respondent agreed to change the designation "of at least some of the documents from 'trade secret/commercially sensitive' to 'Confidential,'" but conditioned the redesignation on Petitioner's agreement that only one of Petitioner's in-house attorneys, approved by Respondent,

---

[3] *Id.*; 19 TTABVUE 2, ¶ 2. Petitioner filed a "confidential" chart (Exhibit G) with its motion, identifying the designations for all documents at issue. 20 TTABVUE at 184-192. The chart identifies twenty documents. In its opposition to Petitioner's motion, Respondent states that it produced "twenty-one documents" (21 TTABVUE at 3), but in that same opposition, Respondent refers to "sixteen" documents being designated "Confidential" and "six" documents being designated "Confidential – For Attorneys' Eyes Only (Trade Secret/Commercially Sensitive)" (i.e., twenty-two documents) (*id.* at 4). The discrepancy appears to be attributable to how the parties grouped the documents. References to the number of documents produced in this order are based on the parties' representations in their briefs. Although there are more than twenty-two **discrete** documents, the Board has also grouped documents together, as appropriate, by Bates ranges for purposes of analysis.

[4] The Board's Standard Protective Order is automatically imposed in all inter partes proceedings. Trademark Rule 2.116(g), 37 C.F.R. § 2.116(g); Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 412.01 (2018). The parties were advised of the imposition of the Standard Protective Order in the institution order. *See* 2 TTABVUE 4. The Board's Standard Protective Order is available on the Board's homepage, www.uspto.gov/ttab. Although it is not necessary for the parties to sign copies of the Board's Standard Protective Order for it to take effect for the duration of this proceeding, it may be advisable for both the parties and their attorneys to sign the Standard Protective Order "so that it is clear that they are all bound thereby; that they have created a contract which will survive the proceeding; and that there may be a remedy at court for any breach of that contract which occurs after the conclusion of the Board proceeding." TBMP §412.03; *see also* TBMP § 412.01.

[5] 22 TTABVUE 2-3, ¶ 3

[6] 19 TTABVUE 9.

would be permitted to see the "Confidential" documents.[7] On July 10, 2018, Petitioner's counsel identified one in-house lawyer but reserved its right to further object to Respondent's designations.[8] The parties did not seek Board approval to modify the Standard Protective Order to formally reflect their amended agreement.

On July 11, 2018, Respondent produced its documents with amended confidentiality designations, changing the designation of sixteen documents from "Confidential – For Attorneys' Eyes Only" to "Confidential" (subject to only the approved in-house counsel seeing the "Confidential" documents).[9] Respondent maintained the "Confidential – For Attorneys' Eyes Only" designation for the remaining six documents and three of the interrogatory responses.[10]

On July 12, 2018, Petitioner emailed Respondent a list of objections and proposed that Respondent downgrade its classification of its responses to interrogatory Nos. 8-10 and the remaining six documents from "Confidential – For Attorneys' Eyes Only" to "Confidential."[11] On July 16, 2018, Respondent agreed to change its designations of the responses to interrogatory Nos. 8 and 10 to "Confidential" (subject to only the approved in-house counsel).[12] As to its response to interrogatory No. 9 and the six remaining "Confidential – For Attorneys' Eyes Only" documents, Respondent

---

[7] *Id.* at 12.

[8] *Id.* at 16.

[9] 22 TTABVUE 3, ¶ 6.

[10] 19 TTABVUE 3-4, ¶ 6; 22 TTABVUE 3, ¶ 6.

[11] 22 TTABVUE 7-10.

[12] *Id.* at 7; 21 TTABVUE 6, n.3 (noting that Respondent's use of the "Confidential" designation on interrogatory Nos. 8 and 10 was contingent on access being limited to Petitioner's outside counsel and sole in-house counsel).

"maintains that these documents and responses contain competitive business information including highly sensitive financial and/or marketing information that would cause harm if disclosed to [Petitioner]."[13]

## 2. Good Faith Effort

Pursuant to § 14 of the Board's Standard Protective Order, "[i]f the parties or their attorneys disagree as to whether certain information should be protected, they are obligated to negotiate in good faith regarding the designation by the disclosing party. If the parties are unable to resolve their differences, the party challenging the designation may make a motion before the Board seeking a determination of the status of the information."[14]

Petitioner's counsel submitted a declaration, which details the parties' negotiations,[15] during which Respondent made certain qualified concessions. However, the parties reached an impasse as to the response to interrogatory No. 9 and the six documents that remained designated as "Confidential – For Attorneys' Eyes Only." Furthermore, the parties continued to disagree about Respondent's insistence that only one of Petitioner's in-house lawyers could review documents redesignated as "Confidential." We find that Petitioner has satisfied the good faith effort requirement prior to filing its motion.

---

[13] 22 TTABVUE 7.

[14] Standard Protective Order ¶ 14.

[15] 19 TTABVUE; 20 TTABVUE. The Board refers to the exhibits at 20 TTABVUE in general terms as they were designated confidential when filed.

### 3. The Board's Standard Protective Order

#### a. In General

The Board's Standard Protective Order provides for two tiers of protected information: (1) Confidential and (2) Confidential – For Attorneys' Eyes Only (trade secret/commercially sensitive) (hereafter "AEO"). *See* TBMP § 412.01. The designations "Confidential" or "AEO" "should be limited to information that the producing party or their counsel has determined, in good faith, contains, reflects, or reveals non-public, confidential, proprietary or commercial information that is not readily ascertainable through proper means by the public or the receiving party, to the extent that information either is the type of information that the party normally attempts to protect from disclosure or is subject to privacy protection under federal, state or local law." TBMP § 412.01(a). The "AEO" designation should be limited to information that "can be used in the operation of a business or other enterprise and that is sufficiently valuable and secret to afford an actual or potential economic advantage over others." *Id.* (quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 39 (Am. Law Inst. 1995)). The Standard Protective Order identifies "types of information" that "**may**" qualify as "AEO" information, such as sensitive business information, including highly sensitive financial or marketing information, and competitive business information, including non-public financial and marketing analyses and strategic product/service expansion plans. Standard Protective Order at ¶ 1 (emphasis added); *see also* TBMP § 412.10(a).

Parties may access information designated as "Confidential," subject to any agreed exceptions. *See* TBMP § 412.01. Parties, including in-house counsel, do **not** have access to information designated "AEO." *Id.*

#### b. Respondent's Responsibilities as Designating Party

As the designating party, Respondent bears the burden of demonstrating that its confidentiality designations are appropriate. *See* Standard Protective Order ¶ 14; TBMP § 412.01(b). To successfully carry this burden, Respondent "must demonstrate a particular need for protection and that a clearly defined and serious injury will result otherwise." TBMP § 412.01(b); *see, e.g.*, *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987) (collecting cases). Where the information sought to be protected is allegedly sensitive or competitive business information that is "AEO" information, Respondent "must show that disclosure would cause a clearly defined serious injury to its business such as harm to its competitive and financial position. Such a showing of harm to a party's business requires support, where possible, by affidavits or declarations and concrete, specific examples." TBMP § 412.01(b) (notes omitted); *see also Deford*, 120 F.R.D. at 653. "Stereotyped and conclusory statements" are insufficient. TBMP § 412.01(b); *see FMR Corp. v. Alliant Partners*, 51 USPQ2d 1759, 1761 (TTAB 1999); *In re Bank One Sec. Litig.*, 222 F.R.D. 582, 588 (N.D. Ill. 2004) ("good cause does not permit 'stereotyped and conclusory statements'") (*quoting Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

### 4. The Designations Dictate Level of Protection

The designations "Confidential" and "AEO" in the Board's Standard Protective Order dictate who has access to information, materials and documents responsive to discovery requests. The terms of the Board's Standard Protective Order may be modified, upon motion or upon stipulation approved by the Board. TBMP § 412.01. However, the parties may not agree to redefine the Board's definition of what information constitutes "Confidential" and "AEO" information. The parties may agree to change who has access to information and materials, but the designations retain the meaning the Board dictated in the Standard Protective Order. By way of example, under the Standard Protective Order, if a response is designated "Confidential," it is reviewable by all in-house counsel, but parties may agree to modify the Standard Protective Order to limit access to "Confidential" material to specific individuals, regardless of their titles or roles. That type of modification of the parties' behavior with respect to the documents does not purport to change the legal effect of the designations in the Standard Protective Order.

Here, the parties never mutually agreed to modify the Standard Protective Order; nor did they submit a modified protective order for Board approval. Although Respondent redesignated its responses to interrogatory Nos. 8 and 10 and certain of its documents designated as "AEO" to "Confidential" on the condition that only a single in-house counsel for Petitioner would be permitted access to those documents, Petitioner reserved its right to challenge that unilaterally-imposed limitation, and does so in its motion. Because of this residual dispute, we must address which of the two default designations in the Board's Standard Protective Order — which govern unless the parties

7

stipulate otherwise — applies. Below, we reviewed the original designations for the responses to interrogatory Nos. 8-10 and each of the documents, Bates labeled DME0001-DME00154 (except for DME000083, for which Respondent withdrew its confidentiality designation) to determine whether the original designations were appropriate under the Standard Protective Order.

### 5. Respondent's Confidentiality Designations

#### a. Respondent's Responses to Interrogatory Nos. 8-10

##### i. Interrogatory No. 8

Interrogatory No. 8 requests the identity of all agreements, including, but not limited to, license agreements, sponsorship agreements, and broadcast agreements relating to the use of Respondent's mark.[16] In its response, Respondent identifies the names and addresses of companies and individuals with whom it has entered into agreements relating to, among other things, financing, business development, television broadcasting, television production, and licensing.[17]

Respondent argues that Petitioner and Respondent are direct competitors in the business of organizing and promoting polo events and tournaments and that, if disclosed to Petitioner's officers and employees, the information responsive to interrogatory No. 8 "would allow Petitioner to unfairly leverage Respondent's efforts to commercialize [Respondent's mark] by, among other things, targeting Respondent's past business

---

[16] 20 TTABVUE 19.

[17] *Id*. at 19-20.

partners and undercutting Respondent's negotiating position in future business deals with those partners."[18]

The disclosure of information protected under the terms of the Standard Protective Order may be used only to facilitate the prosecution or defense of this Board proceeding. In addition, the recipient of any protected information disclosed in accordance with the terms of the Standard Protective Order (e.g., outside counsel, in-house counsel, employees of the parties, etc.) is obligated to maintain the confidentiality of the information and shall exercise reasonable care in handling, storing, using, disseminating, retaining, returning, and destroying the information. *See* Standard Protective Order at ¶ 11. Respondent has not produced any evidence supporting its fear that Petitioner will violate its obligations under the Standard Protective Order by misusing designated information produced in this proceeding. Respondent's fear is speculative.

Furthermore, although licensing agreements, sponsorship agreements, broadcast agreements, and the like **may** contain information that merits the "AEO" designation, Respondent does not provide any details concerning any such agreements in response to interrogatory No. 8. Rather, Respondent merely identifies the names and addresses of companies and individuals with whom it has entered into unidentified agreements. Respondent does not provide information concerning what relationship or agreement it had or has with any specific company or individual or identify any confidentiality agreements between Respondent and the third parties that would prevent the disclosure

---

[18] 21 TTABVUE 6.

of the names of the companies and individuals. Moreover, in its answer to the petition to cancel, Respondent identifies the names of companies with whom it has had relationships, including ESPN, Lexus, and Tiffany & Co.[19] Indeed, Respondent organized polo events that were broadcast on ESPN, and therefore many of its relationships were publicly known via those broadcasts. Unlike, for example, a list that identifies a party's customer names, which may be entirely undiscoverable or only discoverable in limited form (such as in abandonment cases), *see* TBMP § 414, here, there is insufficient context for the list of names provided in response to interrogatory No. 8 to maintain an "AEO" designation.

Respondent has not shown that disclosure of the information provided in response to interrogatory No. 8 will cause any injury to Respondent's business, let alone a clearly defined serious injury. As such, Respondent has failed to demonstrate good cause to designate its response to interrogatory No. 8 as "AEO." However, the response to interrogatory No. 8 does include personal identifying information of certain individuals, namely, names and addresses,[20] and Respondent represents that there are concerns about respecting the privacy of these individuals. Accordingly, although Respondent may

---

[19] 15 TTABVUE 3-5, ¶¶ 8, 12, 14.

[20] "Personal identifying information" typically includes, among other things, a person's name, address, email address, telephone number, driver's license number, and social security number. *See, e.g.*, N.Y. Lab. Law § 203–d(1)(d) (McKinney 2009) (defining "personal identifying information"); Cal. Penal Code § 530.55 (2007) (same); Nev. Rev. Stat. Ann. 205.4617 (same); S.C. Code Ann. § 30-2-30 (1976) (same); *see also Smith v. Dep't of Labor*, 798 F. Supp. 2d 274, 284 (D.D.C. 2011) (referring to "personal identifying information" as including "a person's name, address, phone number, date of birth, criminal history, medical history, and social security number"). The party identifying the personal identifying information bears the burden to support its designation under the Standard Protective Order or its refusal to produce such information based on privacy concerns.

not use the "AEO" designation, Respondent may redesignate the response to interrogatory No. 8 as "Confidential" pursuant to the terms of the Standard Protective Order.

### ii. Interrogatory No. 9

Interrogatory No. 9 requests Respondent's annual gross revenues, by year, from the use of Respondent's mark in the United States from the date of first use of Respondent's mark until the present.[21] In its response, Respondent identifies its approximate total revenue received in connection with Respondent's use of Respondent's mark.[22]

In addition to generally arguing that Respondent and Petitioner are direct competitors and expressing the same concerns identified above for interrogatory No. 8, Respondent urges that this information qualifies for the "AEO" designation because it generally labels its revenues as "competitive business information including highly sensitive financial and/or marketing information that would cause harm if disclosed to [Petitioner]."[23]

Respondent, however, does not identify what harm will occur if this information is disclosed to Petitioner or how Petitioner could misuse a figure that identifies Respondent's total gross revenue to date. Respondent thus has not shown that wrongful use or disclosure of the information provided in response to interrogatory No. 9 will cause serious injury to Respondent's business. As such, Respondent has failed to carry its burden of demonstrating good cause to use the heightened "AEO" designation for its

---

[21] 20 TTABVUE 20.

[22] *Id.*

[23] 21 TTABVUE 5.

response to interrogatory No. 9. However, because revenues are routinely treated as confidential information in Board proceedings, *see Bass Pro Trademarks LLC v. Sportsman's Warehouse, Inc.*, 89 USPQ2d 1844, 1849 (TTAB 2008) ("Respondent is advised that we will consider only information that is truly confidential as confidential (e.g., sale expenditures, revenues, trade secrets, etc.)."), the response to interrogatory No. 9 may be redesignated as "Confidential" pursuant to the terms of the Standard Protective Order.

### iii.  Interrogatory No. 10

Interrogatory No. 10 requests the identity of all persons with whom Respondent or anyone acting on Respondent's behalf communicated regarding the use of Respondent's mark in the United States over the last 10 years.[24] In its response, Respondent identifies a list of individuals, with no identifying information beyond the individual's name.[25]

Respondent's arguments for designating as confidential the names listed in response to interrogatory No. 10 are the same for designating the names listed in response to interrogatory No. 8, some of which overlap.[26] The result is also the same, because Respondent has failed to demonstrate good cause to designate its response to interrogatory No. 10 as "AEO." Although there may be aspects of Respondent's relationships or communications with the individuals listed in response to interrogatory No. 10 that could merit the designation of "AEO," Respondent does not provide any

---

[24] 20 TTABVUE 21.

[25] *Id*. at 21-22.

[26] 21 TTABVUE 6.

information concerning the individuals listed to support an "AEO" designation. Instead Respondent merely identifies the names of individuals with whom it has communicated.

Respondent has not shown that disclosure of the information will cause serious injury to Respondent's business, let alone a clearly defined serious injury. Accordingly, the response to interrogatory No. 10 may not be designated as "AEO." However, in view of Respondent's reasonable representation that there was an expectation of privacy for these third parties, Respondent may redesignate the response to interrogatory No. 10 as "Confidential" pursuant to the terms of the Standard Protective Order.

### b. Respondent's "AEO"-designated Documents

The six categories of documents whose designation as "AEO" is disputed can be broken down into the following categories:

(i)    agreements with ESPN and related documents (Bates Nos. DME000001-03, DME000004-06, DME000007, DME000008-09, DME000010-11, DME000012, DEM000029-31, and DME000032-43);

(ii)   financing and operating agreements (Bates Nos. DME000013-019 and DME000020-28);

(iii)  documents related to sponsorship opportunities (Bates Nos. DME000044-72, DME000073-75, DME000076, and DME000154);

(iv)   daily planner entries and handwritten notes (Bates Nos. DME000077, DME000078, DME000091-92, DME000098-153);

(v)    documents related to Respondent's plans in 2017 (DME000079-81, DME000082, DME000083,[27] DME000084-90); and

(vi)   invoices (Bates Nos. DME000093-97).

---

[27] Respondent withdrew its confidentiality designation from the document bearing Bates No. DME000083. As such, DME000083 is not addressed in this order.

### i. Agreements with ESPN and Related Documents

Respondent produced its television agreement with ESPN (as amended) and several documents concerning its negotiations with ESPN. The documents are dated between September 2002 and February 2007. Respondent argues that these documents should be designated "AEO" because Respondent and Petitioner are direct competitors, Respondent specifically alleges that Petitioner wants to have its own series of polo events, and the documents and information produced by Respondent "constitute Respondent's exclusive blueprint for the successful packaging of national sponsors for a series of nationally televised, high-level polo tournaments."[28] Respondent fears that, by gaining access to the documents, Petitioner could use that information to copy Respondent's business model and undercut Respondent's own business.[29]

Petitioner argues, among other things, that the documents should be designated at most "Confidential" and do not merit an "AEO" designation because the documents related to ESPN are more than ten years old and the ESPN agreement is expired.[30]

First, Respondent's fear that Petitioner will misuse designated information in violation of the Standard Protective Order is again speculative. Respondent has not produced any evidence supporting that fear. *See, e.g.*, *Deford*, 120 F.R.D. at 654 ("Speculative allegations of injury from the disclosure of years-old information are not sufficient to warrant issuance of a protective order.").

---

[28] 23 TTABVUE 3-4, ¶ 6.

[29] *Id.*

[30] 25 TTABVUE 9-10.

Second, although both parties maintain that they are in the business of organizing polo events,[31] and therefore are considered competitors for purposes of this motion, the age of the documents is relevant. Where commercially sensitive information is stale, this can undermine a party's claim that disclosure will create a competitive disadvantage. *See, e.g.*, *Deford*, 120 F.R.D. at 654 ("While staleness of the information sought to be protected is not an absolute bar to issuance of an order, it is a factor which must be overcome by a specific showing of present harm."); *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 250 (S.D.N.Y. 2009) (rejecting, in the absence of supporting evidence, party's argument that, from stale financial information over seven years old, a "competitor could … target certain member firms and attempt to lure them away ... by offering them more competitive fees").

The ESPN agreement itself does not per se merit an "AEO" designation. Although the ESPN agreement discloses certain financial terms of the broadcast relationship between Respondent and ESPN, that information is stale. The ESPN agreement is more than thirteen years old and appears to have expired more than ten years ago. The ESPN agreement does not include a confidentiality clause, and Respondent has produced no evidence that Respondent and ESPN had a confidentiality agreement in connection with their contractual relationship. The ESPN agreement also does not disclose forward-looking strategies for marketing or staging the event. As such, Respondent has failed to carry its burden of demonstrating good cause to designate the ESPN agreement (as amended), namely Bates Nos. DEM000029-31 and DME000032-43, as "AEO." However,

---

[31] 1 TTABVUE 2-3, ¶ 1; 15 TTABVUE 3-4, ¶¶ 8-11.

in view of Respondent's representation that the ESPN agreement is non-public and that there was an expectation of privacy with ESPN, the Board will permit Bates Nos. DEM000029-31 and DME000032-43 to be designated as "Confidential" pursuant to the terms of the Standard Protective Order.

The documents reflecting and summarizing the negotiations between Respondent and ESPN stand on different footing than the ESPN agreement, as they disclose sensitive business information and competitive business information of the type that qualifies as "AEO," including, for example, discussions concerning marketing, production, and staging strategies, where such strategies could be extrapolated out to present day use. *See, e.g.*, *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 892 (E.D. Pa. 1981) ("[O]ld business data may be extrapolated and interpreted to reveal a business' current strategy, strengths, and weaknesses"). As such, the following documents related to Respondent's negotiations with ESPN may be designated "AEO": Bates Nos. DME000001-03, DME000004-06, DME000007, DME000008-09, DME000010-11, and DME000012.

### ii. Financing and Operating Agreements

Respondent produced financing and operating agreements under the "AEO" designation. These documents identify individual members of Respondent as well as the ownership shares of each of Respondent's members. Petitioner argues that these documents should be designated at the lower "Confidential" level, and to the extent there

is financial information that should not be seen by Petitioner, Petitioner argues that those portions can be redacted.[32]

Under the Standard Protective Order, if a document contains "AEO" information, then the document may be designated as such. The entirety of the document does not have to contain "AEO" information for the designation to be appropriate. Therefore, we reject Petitioner's argument that we should order Respondent to redact any "AEO" information and then de-classify the redacted document to "Confidential." Although the financing and operating agreements are over ten years old, they disclose the ownership shares of each of Respondent's members, and nothing in the record suggests that that information is stale. As such, the financing and operating agreements, namely Bates Nos. DME000013-019 and DME000020-28, have appropriately been designated as "AEO."[33]

### iii. Documents Related to Sponsorship Opportunities

Respondent produced documents related to sponsorship opportunities and sponsorship pitch materials under the "AEO" designation. The sponsorship documents appear to all be from 2008. Respondent argues that Petitioner "could misappropriate Respondent's past pitch materials in an effort to persuade past or potential sponsors to

---

[32] 25 TTABVUE 9-10.

[33] Although not required to produce redacted portions of "AEO" information or to produce redacted copies of "AEO" information, the parties are expected to cooperate with one another in the discovery process. *See* TBMP § 408.01. Such cooperation should include consideration, as appropriate, of requests to redact information from documents designated "AEO" so that the redacted version may be treated as "Confidential," and thereby reviewed by parties and counsel, not just outside counsel.

partner with [Petitioner] instead of Respondent."[34] Respondent also argues that Petitioner "would better understand what Respondent has offered its partners in exchange for past sponsorship commitments, and could develop more beneficial terms" and Petitioner "would learn the dollar amounts associated with Respondent's past contracts, which it could use to bid on or negotiate future relationships with Respondent's partners."[35]

Petitioner argues that the sponsorship documents are ten years old and, in addition, urges that these documents should not be considered confidential because they were shared with third parties.[36]

Bates Nos. DME000044-72 and DME000073-75 comprise pitch materials to a specific company, pitching that company to be a sponsor for Respondent's 2008 polo events. The pitch materials disclose Respondent's marketing strategies and ways those strategies will be executed, which is information that could be extrapolated to present use. *See, e.g.*, *Zenith Radio Corp.*, 529 F. Supp. at 892 (E.D. Pa. 1981). Such sensitive business information is of the type that qualifies as "AEO" information. As such, Respondent appropriately used the "AEO" designation for the pitch materials, namely Bates Nos. DME000044-72 and DME000073-75.

Bates No. DME000076 was also appropriately designated as "AEO" because it identifies not only the rate for the 2008 sponsorship opportunity, but also Respondent's

---

[34] 21 TTABVUE 7.

[35] *Id.*

[36] 25 TTABVUE 8-9.

costs associated with the sponsorship. Costs specifically related to the sponsorship pitch may be designated as "AEO."

The final sponsorship document is Bates No. DME000154, titled "Title Sponsorship." It is a one-page summary of the benefits from sponsoring Respondent's polo events. The document includes contact information if the recipient of the document is interested in learning more information about being a sponsor. This document does not appear to have been targeted to any specific company. On its face, it was presumably provided to third parties, namely potential sponsors; Respondent does not contend that it was not. "Information which may not be designated as subject to any form of protection includes information that is or becomes publicly available or information that has been disclosed to the public or a third party …." TBMP § 412.01(a); *see also Noble House Home Furnishings, LLC v. Floorco Enters., LLC*, 118 USPQ2d 1413, 1418 n.28, 1419 n.31 (TTAB 2016) (advertising and marketing proposals sent to third party were not confidential); *Couch/Braunsdorf Affinity, Inc. v. 12 Interactive, LLC*, 110 USPQ2d 1458, 1460 (TTAB 2014) ("It is inconceivable that marketing materials distributed to respondent's purchasers and potential purchasers could be confidential documents. To that end, we note that the marketing materials do not contain a warning or legend advising the purchasers or potential purchasers that the marketing materials contain trade secrets and should be kept confidential.").

Given that the title sponsorship document was apparently shared with third parties, Respondent did not produce any evidence of a confidentiality agreement with any sponsors, and the document's old age, Respondent has failed to demonstrate good cause

to have designated it as "AEO." However, in view of Respondent's representation that the document is non-public and given that it discloses the amount Respondent proposed to charge its sponsors in 2008, Respondent may redesignate Bates No. DME000154 as "Confidential" pursuant to the terms of the Standard Protective Order.

### iv. Daily Planner Entries and Handwritten Notes

Respondent does not mention these documents in its opposition to Petitioner's motion or supporting declarations; nor does Respondent identify to which document requests the daily planner entries and handwritten notes are responsive. Many of the daily planner entries and handwritten notes comprise personal identifying information of third parties, including phone numbers, email addresses, and physical addresses. There is nothing on the face of the documents that would suggest that disclosure of the documents would cause any serious injury to Respondent's business, let alone a clearly defined serious injury. Respondent has therefore failed to demonstrate good cause to have designated the daily planner entries and handwritten notes as "AEO." Accordingly, the daily planner entries and handwritten notes, namely, Bates Nos. DME000077, DME000078, DME00091-92, DME000098-110, DME000111-153, may not be designated as "AEO." However, in view of Respondent's representation that the daily planner entries and handwritten notes are non-public and recognizing the privacy interest of the third parties whose personal identifying information is disclosed, the daily planner entries and handwritten notes may be redesignated as "Confidential" pursuant to the terms of the Standard Protective Order.

### v. Documents Related to Respondent's Plans in 2017

Respondent produced documents related to its plans in 2017, including for a polo event in 2017. Respondent does not mention these documents in its opposition to Petitioner's motion or supporting declarations. Two of the documents (DME00079-81 and DME000084-90) appear to be announcements from publicly available third-party sources (themorningline.com and gopolo.com) advertising upcoming polo events. There is absolutely nothing confidential about these documents. The Board finds that these documents should receive no designation.

The document Bates No. DME000082 comprises proposed business terms for the sale of a trophy and license to a website in 2017. The document also includes a redacted paragraph. Respondent does not explain why this paragraph is redacted. For the unredacted portions of the document, Respondent has failed to demonstrate good cause to designate the document "AEO." However, in view of the non-public nature of the email correspondence and proposed business terms, DME000082 may be redesignated as "Confidential." Unless the redacted portion is protected from disclosure, such as by the attorney-client privilege or work product doctrine, an unredacted version should be produced.[37] If the redacted information merits the designation of "AEO" consistent with the guidance provided in this order, then the document may be produced in unredacted form and designated as such. Otherwise, an unredacted version should be produced and redesignated "Confidential."

---

[37] If the redacted material is protected from disclosure based on the attorney-client privilege or work product doctrine, that information should be identified on a privilege log. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii); *see also Amazon Techs. Inc. v. Wax*, 93 USPQ2d 1702, 1706 n.6 (TTAB 2009).

### vi. Invoices

Respondent does not mention these documents in its opposition to Petitioner's motion or supporting declarations; nor does Respondent identify to which document requests the invoices are responsive. On their face, the invoices appear to relate to internet hosting and domain registration services. Nothing on the face of the documents suggests that their disclosure would cause any serious injury to Respondent's business, let alone a clearly defined serious injury, and Respondent does not argue that disclosure would cause such injury. As such, Respondent has failed to demonstrate good cause to have designated the invoices as "AEO." However, because the invoices contain information concerning the costs associated with Respondent's website maintenance, Respondent may redesignate the invoices, namely, Bates Nos. DME000093-97, as "Confidential" pursuant to the terms of the Standard Protective Order.

### 6. Decision

Petitioner's motion to challenge the confidentiality designations of Respondent's produced documents and certain of its interrogatory responses is **GRANTED IN PART**.

Responses to interrogatory Nos. 8, 9 and 10 may be designated as "Confidential" under the Board's Standard Protective Order. Respondent is allowed until **TEN DAYS** from the date of this order to serve the responses to interrogatory Nos. 8, 9, and 10 with the revised designations. Consistent with the express terms of the Standard Protective Order, the parties and their counsel are entitled to see information designated as "Confidential."

Only the following documents may be designated as "Confidential – For Attorneys' Eyes Only": Bates Nos. DME000001-03, DME000004-06, DME000007, DME000008-09, DME000010-11, DME000012, DME000013-019, DME000020-28, DME000044-72, DME000073-75, DME000076. Respondent is allowed until **TEN DAYS** from the date of this order to reproduce these documents with the designation of "Confidential – For Attorneys' Eyes Only." Consistent with the express terms of the Standard Protective Order, unless agreed otherwise, the parties, including in-house counsel, are not entitled to review these documents.

The following documents were inappropriately designated as "AEO": Bates Nos. DEM000029-31, DME000032-43, DME000077, DME000078, DME000082,[38] DME00091-92, DME000093-97, DME000098-110, DME000111-153, and DME000154. Respondent is allowed until **TEN DAYS** from the date of this order to reproduce these documents to Petitioner with the designation of "Confidential." Consistent with the express terms of the Standard Protective Order, the parties and their counsel are entitled to review information designated as "Confidential."

The following of Respondent's document production shall receive neither of the protected designations under the Standard Protective Order: DME00079-81 and DME000084-90. Respondent is allowed until **TEN DAYS** from the date of this order to reproduce these documents without any such designation.

The parties are again reminded that disclosure of information protected under the terms of the Standard Protective Order is intended only to facilitate the prosecution

---

[38] DME000082 may be redacted, as appropriate, consistent with the guidance provided *supra*.

or defense of this Board proceeding. The recipient of any protected information disclosed in accordance with the terms of the Standard Protective Order (e.g., outside counsel, in-house counsel, employees of the parties, etc.) is obligated to maintain the confidentiality of the information and shall exercise reasonable care in handling, storing, using, disseminating, retaining, returning, and destroying the information. *See* Standard Protective Order at ¶ 11.

## 7. Proceedings Resumed

Proceedings are resumed. Respondent's motions to extend, filed October 5 and December 5, 2018, were unnecessary and should not have been filed as the Board issued its order suspending these proceedings on September 17, 2018. In its suspension order, the Board noted that the deadline for serving expert disclosures was not tolled. Accordingly, the Board's order of December 8, 2018 (28 TTABVUE) is **VACATED**. Dates are reset as set out below:

| | |
|---|---|
| Discovery Closes | 5/24/2019 |
| Plaintiff's Pretrial Disclosures Due | 7/8/2019 |
| Plaintiff's 30-day Trial Period Ends | 8/22/2019 |
| Defendant's Pretrial Disclosures Due | 9/6/2019 |
| Defendant's 30-day Trial Period Ends | 10/21/2019 |
| Plaintiff's Rebuttal Disclosures Due | 11/5/2019 |
| Plaintiff's 15-day Rebuttal Period Ends | 12/5/2019 |
| Plaintiff's Opening Brief Due | 2/3/2020 |
| Defendant's Brief Due | 3/4/2020 |
| Plaintiff's Reply Brief Due | 3/19/2020 |
| Request for Oral Hearing (optional) Due | 3/29/2020 |

Generally, the Federal Rules of Evidence apply to Board trials. Trial testimony is taken and introduced out of the presence of the Board during the assigned testimony

periods. The parties may stipulate to a wide variety of matters, and many requirements relevant to the trial phase of Board proceedings are set forth in Trademark Rules 2.121 through 2.125. These include pretrial disclosures, matters in evidence, the manner and timing of taking testimony, and the procedures for submitting and serving testimony and other evidence, including affidavits, declarations, deposition transcripts and stipulated evidence. Trial briefs shall be submitted in accordance with Trademark Rules 2.128(a) and (b). Oral argument at final hearing will be scheduled only upon the timely submission of a separate notice as allowed by Trademark Rule 2.129(a).

***